**FOR PUBLICATION**

ATTORNEY FOR APPELLANT:

**RODNEY T. SARKOVICS**
Campbell Kyle Proffitt LLP
Carmel, Indiana

ATTORNEYS FOR APPELLEE:

**ERIC J. BENNER**
**TIMOTHY J. HIXSON**
Richards, Boje, Pickering, Benner & Becker
Noblesville, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

**FILED**
Apr 17 2012, 9:19 am

**CLERK**
of the supreme court,
court of appeals and
tax court

| | | |
|---|---|---|
| BARBARA (ROSARIO) BESSOLO, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 29A02-1108-DR-789 |
| | ) | |
| WILLIAM I. ROSARIO, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |
| | ) | |

APPEAL FROM THE HAMILTON SUPERIOR COURT
The Honorable J. Richard Campbell, Judge
Cause No. 29D04-1006-DR-1647

**April 17, 2012**

**OPINION - FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

Following dissolution of their marriage, Barbara (Rosario) Bessolo ("Mother") and William Rosario ("Father") were involved in disputes concerning their young daughter. In response to the many motions that followed, the trial court found that Mother failed to dismiss the protective order against Father as required by the dissolution decree, held her in contempt, and awarded compensatory damages and attorney's fees to Father. While we conclude that these rulings were proper, we reach a contrary result regarding the ten-day suspended sentence imposed on Mother for future violations of any of the court's orders. We affirm in part and reverse in part.

**Facts and Procedural History**

Mother and Father have one child together, S.R., born December 4, 2005. In June 2010, Mother filed a petition for dissolution. During dissolution proceedings, Mother and Father reached a mediated settlement agreement. A key feature of the agreement was the requirement that Mother dismiss a protective order against Father on or before November 12. However, the settlement agreement expressly provided that its terms were not binding until the agreement was approved by the court. Mother signed the agreement on November 5, 2010. After a brief delay, Father also signed the agreement.[1] The dissolution court approved and incorporated the agreement into the dissolution decree and dissolved the parties' marriage on November 30, 2010. The clerk file-stamped the decree and delivered it to counsel the next day, December 1. Mother did not dismiss the protective order.

---

[1] The record does not indicate the reason for this delay. *See* Tr. p. 279.

2

One incident is relevant to this appeal. On December 5, 2010, a parenting-time exchange was scheduled. Mother sent the parties' former housekeeper, Vita, to pick up S.R. S.R. entered Vita's car while Father was making a phone call. Mother was also in the car Vita was driving, though she did not make her presence known to Father and Father could not see her through the car's tinted windows. Vita drove away with S.R. while Father was on the phone. Father followed the vehicle and contacted the Carmel Police Department. Mother also contacted the Carmel Police Department and informed a dispatcher that Father was following their car and that the parties' divorce had recently been finalized, which made Father upset. She told the dispatcher a number of times that she had a protective order against Father. The dispatcher instructed Mother to go with Vita and S.R. to a public place, a nearby grocery store parking lot, instead of returning to Mother's home. Meanwhile, the dispatcher speaking to Father told him to pull into the same grocery store parking lot and wait in his car for authorities.

Officers met Mother and Father in the parking lot. Mother told them that she had a protective order against Father. The officers confirmed that a protective order was still in place. Father was arrested and spent twenty hours in jail before being released on his own recognizance. No charges were filed against him. Mother filed a motion to dismiss the protective order two days later, which was granted. On December 21, Father filed a verified motion to show cause requesting that Mother be held in contempt for her actions on December 5.[2]

---

[2] The parties also filed motions related to an unsubstantiated allegation of child abuse as well as personal property, which are not at issue here. Mother also filed a verified motion to show cause, requesting that Father be held in contempt for failure to pay child support. The trial court found Father in

The trial court heard evidence on Father's contempt motion at a number of hearings with the final hearing held in June. At the hearings, both parties discussed the December 5 incident. Father stated that he spoke with Mother during the exchange but did not know Mother was in Vita's car. He explained that he contacted authorities and followed the car because Vita left suddenly with S.R. without his consent and because he wanted to know that S.R. was being returned to Mother's care. Father also said that he thought the protective order had been dismissed. Tr. p. 240. He testified that his arrest and imprisonment caused him to be absent from work for one day and lose $450 in income. *Id.* at 229. He also stated that he later had his record expunged, which cost $2500, and submitted evidence of his attorney's fees. *See* Respondent's Exs. I, K.

Mother testified that she sent Vita to pick up S.R. because "there was a protective order in place and I didn't want to have any trouble." *Id.* at 287. When asked about the requirement that she dismiss that very order, the following exchange occurred:

MR. BENNER [Father's Counsel]: It says right there when you are to dismiss the protective order, doesn't it?

[Mother]: My understanding is that this is valid assuming that the divorce decree was signed on November 5, which it wasn't.

MR. BENNER: Judge Campbell signed it on November 30, didn't he?

[Mother]: Yes.

MR. BENNER: It went into [e]ffect on November 30, didn't it?

[Mother]: I believe so.

MR. BENNER: Okay, I think you just testified just a few minutes ago you wanted it to go into [e]ffect immediately didn't you?

---

contempt and awarded Mother $2000 in attorney's fees for pursuit of that motion. Appellant's App. p. 12.

[Mother]: Yes.

MR. BENNER: You wanted both yourself and [Father] to be bound by this immediately, didn't you?

[Mother]: The minute it was signed.

MR. BENNER: And you knew what you signed, didn't you?

[Mother]: Say that again, sorry?

MR. BENNER: You knew exactly what your obligations were under this agreement when you signed it, didn't you?

[Mother]: When I signed it on November 5, yes. But he signed it many days later.

*Id.* at 295-96.

Mother also confirmed that she spoke to Father by phone during the exchange but did not inform him of her presence. Mother implied, however, that Father knew she was in the car with Vita and S.R., and that after their car pulled away, Father began "speeding and chasing" the car. *Id.* at 290. Officer Bryan Martin, one of the officers at the scene, also testified about the exchange. Officer Martin stated that Mother indicated that there was a protective order in place, and when the officers confirmed the validity of the order, he was required to arrest Father. *Id.* at 319-20.

In July 2011, the trial court ruled on the parties' motions. In pertinent part, the court found Mother in contempt for failing to timely dismiss the protective order against Father, explaining that Mother "used the protective order as a way to have [Father] arrested," despite knowing "she was obligated to dismiss the protective order pursuant to the divorce decree." Appellant's App. p. 10. Mother was ordered to pay Father a total of

5

$10,000 in compensatory damages—$2500 to expunge his arrest record and $7500 for "[Father's] arrest and time in jail . . . for his inconvenience, embarrassment, and mental suffering." *Id.* at 11. The court also "impose[d] a 10-day suspended jail sentence which may be served if [Mother] violates this Court's orders in the future." *Id.* The trial court awarded Father attorney's fees in the amount of $10,000 for "bringing his motion for rule to show cause and for [Mother's] contempt of court and incurred for successfully defending [Mother's] meritless motion to restrict [Father's] parenting time." *Id.* at 12.

Mother now appeals.

**Discussion and Decision**

Mother raises three issues on appeal. First, she contends that the trial court erred by finding her in contempt. Specifically, Mother argues that the dissolution decree required her to dismiss the protective order by November 12, 2010, but the decree was not entered until December 1, thus she could not have been in contempt for failure to act by November 12. Mother also argues that the suspended sentence imposed on her for future violations of court orders was punitive. Second, Mother argues that the trial court erred by awarding Father $10,000 in compensatory damages, as there was no evidence in the record to support this award and because she was not responsible for his arrest. Finally, Mother claims that the award of attorney's fees to Father was error because the trial court did not consider the parties' incomes or earning abilities. We address each of Mother's contentions in turn.

6

## I. Contempt

Mother contends that the trial court abused its discretion by finding Mother in contempt for failing to dismiss the protective order against Father on or before November 12, 2010. Mother also argues that the trial court erred by imposing on her a ten-day suspended jail sentence for future violations of the court's orders.

"Uncontradicted evidence that a party is aware of a court order and willfully disobeys it is sufficient to support a finding of contempt." *Evans v. Evans*, 766 N.E.2d 1240, 1243 (Ind. Ct. App. 2002) (citations omitted). A determination of whether a party is in contempt is a matter within the trial court's sound discretion, and we reverse only where there has been an abuse of that discretion. *Id.* An abuse of discretion occurs where the trial court's decision is against the logic and effect of the facts and circumstances before the court. *Id.*

Mother and Father reached a settlement agreement that was approved by the trial court and incorporated into the dissolution decree. The agreement required Mother to dismiss the protective order against Father by November 12, 2010; however, a brief delay caused the agreement to be approved by the court after this date, on November 30. Mother correctly notes that the agreement's terms were not binding until approved by the court; thus, she was not required to dismiss the protective order by November 12. Consequently, she cannot be held in contempt for failing to do so. However, the trial court did not find Mother in contempt for failing to dismiss the protective order by November 12. The contempt finding was based on Mother's failure to dismiss the protective order after the parties' dissolution was finalized on December 1 and for telling

7

the police that the protective order was in place despite knowledge that she was required to dismiss it.

Mother's additional challenges to the contempt finding—specifically, that Father delayed submission of the agreement and that after she received it she had a limited amount of time in which to file the motion to dismiss the protective order—are undercut by her actions and statements made to authorities on December 5.[3] As the trial court explained, Mother was aware that the court had dissolved the marriage and that the dissolution decree entered on December 1 required her to dismiss the protective order. By December 5, she had still not dismissed the order, and represented three separate times to the 911 dispatcher and again to police officers on the scene that she had a valid protective order against Father. The trial court explained that Mother "used the protective order as a way to have [Father] arrested." Appellant's App. p. 10. Even if Mother had no say in whether Father was ultimately arrested, the trial court recognized that she set the metaphorical wheels in motion for this result. Because Mother was aware that she was required to dismiss the protective order but failed to do so and later relied upon it in her dealings with authorities, the trial court did not err in finding Mother in contempt.

---

[3] Mother's arguments regarding ambiguity and invited error are not relevant to our analysis as we conclude that the trial court did not find Mother in contempt for failure to dismiss the protective order by November 12, 2010. Thus, any ambiguity or delay in submission of the agreement to the court has no bearing on the trial court's finding that Mother failed to dismiss the protective order *after* entry of the decree and for representing to authorities that the protective order was in place despite knowledge that she was required to dismiss it. *See* Appellant's App. p. 10-11.

## II. Sanctions for Contempt

### A. *Compensatory Damages*

Mother challenges the trial court's award of compensatory damages to Father of $10,000—$7500 for Father's inconvenience, embarrassment, and mental suffering for being arrested and imprisoned, and $2500 for the cost of having his record expunged. The $7500 award was error, Mother claims, because it was not based on evidence or documentation. The $2500 award was also erroneous, Mother argues, because Father's arrest was the result of his own delay of the submission of the settlement agreement and because Carmel police officers, not Mother, made the decision to arrest Father.

"Once a party has been found in contempt of court, monetary damages may be awarded to compensate the other party for injuries incurred as a result of the contempt." *Phillips v. Delks*, 880 N.E.2d 713, 720 (Ind. Ct. App. 2008) (citations omitted). In determining an amount of damages, the trial court may take into account "the inconvenience and frustration suffered by the aggrieved party." *Id*. The determination of damages in a contempt proceeding is within the trial court's discretion, and we will reverse an award of damages only if there is no evidence to support the award. *Id.*

Mother argues that the trial court's $7500 award was error under *Phillips*, in which we reversed a damage award of $25,000 because no evidence was submitted to support the award. *Id*. at 721. However, in *Phillips,* we addressed a quantifiable loss—damage to an individual's credit score. Financial loss was also at issue in *City of Gary v. Major*. 822 N.E.2d 165, 172 (Ind. 2005). In *City of Gary*, our Supreme Court reversed a damage award of $150,000 for the loss of towing contracts because there was no evidence

9

presented to support the award. *Id.* Here, by contrast, we address the value of an intangible loss that is not so readily quantifiable, the loss of one's freedom. Because *Phillips* and *City of Gary* address financial loss, they do not aid our analysis.

Instead, we turn to cases involving an individual's loss of freedom. We have discussed the impact of false imprisonment, stating, "The conduct of the defendant in such circumstances is characterized as being willful, callous, or malicious, which may produce a variety of reactions, such as fright, shock, humiliation, insult, vexation, inconvenience, worry, or apprehension." *Cornwall v. Beatty*, 667 N.E.2d 768, 776 (Ind. Ct. App. 1996) (citations omitted), *reh'g denied*. While it may be difficult to assign a compensatory value to the loss of freedom, we have upheld awards of damages for this loss. *See Lazarus Dep't Store v. Sutherlin*, 544 N.E.2d 513, 526 (Ind. Ct. App. 1989) (evidence that wrongfully-detained shopper was incarcerated just before the holidays, subjected to embarrassment and humiliation in criminal processing including being strip searched, worried about future prosecution, and suffered physical manifestations of trauma associated with arrest supported award of over $300,000), *reh'g denied*, *trans. denied*; *see also Dubreuil v. Pinnick*, 178 Ind. App. 526, 533, 383 N.E.2d 420, 424 (1979) (stating that in action for false imprisonment, "plaintiff may recover for wounded pride and humiliation.").

Though there are no allegations of false imprisonment here, we find the analogy an apt one. Mother failed to dismiss the protective order against Father even though she knew she had to do so. She then informed police of the order. As a result, Father was arrested. Officers handcuffed him in front of his young daughter, in a public parking lot.

10

This was a humiliating experience. *See* Tr. p. 227. Father was held in jail for twenty hours and missed a day of work. There is sufficient evidence to support the trial court's $7500 award.[4]

Mother's challenge to the trial court's award of $2500 also fails. Here we reiterate our earlier conclusion—it matters not that it was the police, not Mother, who decided to arrest Father. It is undisputed that Mother knew she was required to dismiss the protective order. She did not do so. Instead, she informed authorities the order was still in place, which led to Father being arrested and imprisoned. After his release, Father spent $2500 to have his record expunged. The trial court did not err in awarding Father $2500.

### B. Ten-day suspended jail sentence

Mother challenges the trial court's imposition of a ten-day suspended jail sentence for future violations of the court's orders. Mother argues that this sentence is punitive because she has already complied with the provision of the decree at issue by dismissing the protective order and cannot purge herself of future contempt because the trial court makes only a vague reference to future violation of court orders.

The principal purpose of a civil-contempt proceeding is not to punish the contemnor but rather to coerce action for the benefit of an aggrieved party. *Thompson v. Thompson*, 811 N.E.2d 888, 905 (Ind. Ct. App. 2004) (citing *Moore v. Ferguson*, 680

---

[4] Mother argues for the first time in her reply brief that Father failed to offer proof of mental anguish as required by *Lazarus Dep't Store*. 544 N.E.2d 513, 526. We decline to respond to this new argument as the purpose of a reply brief is to respond to the appellee's arguments, not to raise new issues. *See* Ind. Appellate Rule 46(C) ("No new issues shall be raised in the reply brief."). Nevertheless, there is sufficient evidence of Father's humiliation and embarrassment at being arrested in a public place, in S.R.'s presence, to support the award.

11

N.E.2d 862, 865 (Ind. Ct. App. 1997), *trans. denied*), *reh'g denied*, *trans. denied*. "While any imprisonment, of course, has punitive and deterrent effects, such imprisonment shall be viewed as remedial rather than punitive if the court conditions the contemnor's release upon the contemnor's willingness to comply with the order *from which the contempt finding was based upon*." *Id.* at 906 (emphasis added). Put differently, a contempt order seeks to coerce compliance with a specific order of a court—the specific order violated by the contemnor. *Id.*, *see also Moore*, 680 N.E.2d at 685 ("[T]he issue before us is whether the contempt sentence was of a nature that could coerce Moore into compliance with the original support orders . . . ."); *Dawson v. Dawson*, 800 N.E.2d 1000, 1003 (Ind. Ct. App. 2003) ("[A] trial court may use its contempt power to . . . coerce a party into compliance with an underlying order or decree.").

Here, the sentence imposed by the court did not coerce compliance with a specific order of the court. Rather, the sentence coerced compliance with *any* order of the court. And this is undoubtedly so because Mother had already complied with the court's order to dismiss the protective order and there is no indication that the parties will have protective orders in the future that Mother could or would fail to dismiss. Because the suspended sentence does not coerce current or future compliance with a specific court order, it was error.[5]

*C. Attorney's fees*

---

[5] Both parties discuss *Bartlemay v. Witt* in this context. 892 N.E.2d 219, 228 (Ind. Ct. App. 2008). In *Bartlemay*, the trial court sentenced father to ten days imprisonment but suspended the sentence pending his compliance with future court orders. We noted the parties' agreement that the sentence was inappropriate and reversed: "As [mother] acknowledges, the trial court's order imprisons [father] for future noncompliance and does not give him an opportunity to purge himself of the contempt with compliance." *Id.* The brevity of this analysis does not shed light on the appropriateness of the sentence here.

Finally, Mother contends that the trial court erred by awarding Father attorney's fees as the court did not consider the parties' incomes or earning abilities. Mother also argues that the amount of attorney's fees awarded to Father was error. We also address Father's request for appellate attorney's fees.

In post-dissolution proceedings, the trial court may order a party to pay a reasonable amount for attorney's fees. *Julie C. v. Andrew C.*, 924 N.E.2d 1249, 1261 (Ind. Ct. App. 2010). The trial court has broad discretion in awarding attorney's fees. *Id.* Reversal is proper only where the trial court's award is clearly against the logic and effect of the facts and circumstances before the court. *Id.* In assessing attorney's fees, the trial court may consider such factors as the resources of the parties, the relative earning ability of the parties, and other factors bearing on the reasonableness of the award. *Id.* In addition, any misconduct on the part of a party that directly results in the other party incurring additional fees may be taken into consideration. *Id.* Further, "the trial court need not give its reasons for its decision to award attorney's fees." *Thompson*, 811 N.E.2d at 928.

The basis for the award of attorney's fees is Mother's misconduct. This was a proper consideration for the trial court. *See Julie C.*, 924 N.E.2d at 1261. Mother contends, however, that the trial court erred by awarding attorney's fees to Father because the court did not consider the parties' financial resources or earning abilities. In response, Father points out that the parties submitted a child support worksheet before the entry of the dissolution decree. Father also notes that the parties discussed the decree and

13

its support provisions during the hearings on the motions before the court and that the court specifically asked whether Mother was working.

Indeed, the record shows that the trial court reviewed the parties' financial data when considering child support for S.R. We assume this information was considered when the court awarded attorney's fees. *See MacIntosh v. MacIntosh*, 749 N.E.2d 626, 632 (Ind. Ct. App. 2001), *trans. denied*. Further, during the final hearing on the parties' motions, the trial court confirmed Mother's continuing employment. Tr. p. 399. We conclude that the trial court appropriately considered the parties' economic circumstances.[6]

Mother sets forth many other challenges to the amount of attorney's fees awarded to Father. Mother first alleges that the amount awarded was error because Father received nearly all the fees requested despite not prevailing on several issues. However, as Mother expressly states, Father did not receive all the fees requested. He was also ordered to pay Mother $2000 in attorney's fees for her pursuit of a contempt motion on this issue of child support. *See* footnote 2, *supra*. This indicates that the trial court considered the amount of fees appropriate given the success of both parties on their various motions. Mother also claims that the court erred by awarding Father attorney's fees because he was represented by two attorneys at trial. Because Mother did not make this argument to the trial court, it is waived. *See Stainbrook v. Low*, 842 N.E.2d 386, 396 (Ind. Ct. App. 2006) (stating that an appellant who raises an issue for the first time on

---

[6] Because we resolve this issue as we do, we need not consider Mother's argument that the trial court erred by awarding attorney's fees to Father under Indiana Code section 34-52-1-1, which pertains to frivolous actions. There is no evidence that the trial court based its determination on this section, and we have already concluded that the award was proper exercise of the court's discretion to award attorney's fees in post-dissolution proceedings. *See Julie C.*, 924 N.E.2d at 1261.

14

appeal waives the issue), *trans. denied*. Notwithstanding such waiver, there is no evidence to suggest that the attorneys engaged in duplicitous billing. The trial court did not err in awarding Father $10,000 in attorney's fees.

Finally, Father requests that Mother pay his appellate attorney's fees. Father states that Mother was ordered to pay his attorney's fees at the trial level due in part to her contempt and "her misconduct in continuing to pursue a meritless request to restrict [Father's] parenting time." *Bessolo v. Rosario*, No. 29A02-1108-DR-789 (Ind. Ct. App. Feb. 10, 2012). Father claims that this misconduct increased his fees at the trial level and that Mother continues to increase these costs by pursuing this appeal.

Our appellate rules authorize us to "assess damages if an appeal, petition, or motion, or response, is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorneys' fees." Ind. Appellate Rule 66(E). Damages will be assessed only where an appellant, acting in bad faith, maintains a wholly frivolous appeal. *Harness v. Schmitt*, 924 N.E.2d 162, 168 (Ind. Ct. App. 2010) (citations omitted). While Appellate Rule 66(E) permits us to award damages on appeal, we must act with extreme restraint in this regard due to the potential chilling effect on the exercise of the right to appeal. *Id.* "A strong showing is required to justify an award of appellate damages, and the sanction is not imposed to punish mere lack of merit, but something more egregious." *Id.* To prevail on his claim, Father must show that Mother's contentions and arguments on appeal are "utterly devoid of all plausibility." *Bergerson v. Bergerson*, 895 N.E.2d 705, 716 (Ind. Ct. App. 2008) (citations omitted).

Because Mother prevailed on appeal on one issue, we cannot say that Mother's arguments are utterly devoid of all plausibility such that an award of appellate attorney's fees would be appropriate.

Affirmed in part and reversed in part.

ROBB, C.J., and NAJAM, J., concur.