**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Nov 26 2012, 8:51 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**L. DON GALLAWAY, JR**.
Marion, Indiana

ATTORNEY FOR APPELLEE:

**MARK R. REGNIER**
Bingham Farrer & Wilson
Elwood, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| JACK MARSHALL, | ) |
| | ) |
| Appellant-Respondent, | ) |
| | ) |
| vs. | )    No. 27A05-1201-DR-52 |
| | ) |
| BETH MARSHALL, | ) |
| | ) |
| Appellee-Petitioner. | ) |
| | ) |

APPEAL FROM THE GRANT CIRCUIT COURT
The Honorable David A. Happe, Special Judge
Cause No. 27C01-0505-DR-311

**November 26, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

Jack Marshall ("Husband") appeals the trial court's decision in favor of his former wife, Beth Marshall ("Wife"). Husband raises numerous claims related to the trial court's resolution of property-division and child-support issues. Husband has waived his property-division claim by failing to challenge the order underlying it. As to the preserved child-support issues, we find that the trial court did not err by modifying Husband's child-support obligation or in its treatment of extracurricular and extraordinary educational expenses. We also conclude that the trial court did not err by awarding attorney's fees to Wife. We affirm.

**Facts and Procedural History**

Husband and Wife married in 1990, and two children were born of the marriage. Wife filed for divorce in 2005. Three years later, while dissolution proceedings were ongoing, Husband and Wife entered into a marital settlement agreement that resolved the parties' child custody, child support, and property-division issues.

The parties agreed that while they would share legal custody, Wife would have physical custody of the children. Husband was to pay $200 per week in child support. Appellant's App. p. 97. The agreement also provided that "Husband and Wife shall in good faith consult one another regarding extracurricular activities of the children, including expenses for school[-]sponsored extracurricular activities, and agree to divide said mutually agreeable expenses equally." *Id.* at 99.

The parties' pensions, including Husband's Public Employees' Retirement Fund ("PERF") annuity account, were to be divided as follows:

> **Pension Plans.** Wife shall retain possession of her pension plan through George Junior Republic. Husband shall retain possession of his pension plan through Marion Steel. *Wife shall receive through a Qualified Domestic Relations Order ["QDRO"] fifty-percent (50%) of Husband's PERF-annuity savings accounts* of May 1, 2005 ($11,000.00 to [Wife]). Attorney for [Wife] is to prepare and file the QDRO within 60 days of this Order.

*Id.* at 100 (formatting altered) (emphasis added). Modification of the agreement was only permitted upon the parties' joint, written consent, although issues related to child custody, parenting time, and child support were exempt from this provision. *Id.* at 96. The dissolution court approved and incorporated the agreement into the dissolution decree and dissolved the parties' marriage on September 15, 2008.

In the years that followed, the parties repeatedly sought court intervention to settle their disputes. Within a year of the final settlement being approved by the court, Husband filed a motion to modify his child-support obligation. In July 2009, Wife filed a Trial Rule 60(B) motion for relief from judgment regarding Husband's PERF annuity account, as PERF had rejected the QDRO.

On September 22, 2009, the trial judge at the time, the Honorable Fredrick Spencer, granted Husband's request to reduce his child-support obligation from $200 to $115 per week and also granted his request for attorney's fees. However, three days later, on September 25, the trial court entered a new order *sua sponte*, reinstating Husband's $200 per-week child-support obligation and denying his request for attorney's fees. Judge Spencer then retired, and the Honorable Dean Young was appointed special judge.

3

In November 2009, Special Judge Young granted Husband's motion to correct error, reinstating the September 22 order and setting Husband's child-support obligation at $115 per week. Wife then filed her own motion to correct error, which Special Judge Young denied. He did, however, grant Wife's motion for a change of judge, and in February 2010, the Honorable David Happe was appointed special judge.

Wife filed a notice of appeal on February 3, 2010, but it was dismissed by this Court. *Id.* at 124. On July 20, 2010, Wife filed a "Motion to Modify or Clarify." *Id.* at 125. In her motion, Wife explicitly sought to modify or clarify the court's orders as to Husband's child-support obligation, as well as extracurricular and educational expenses. Wife also sought attorney's fees. *Id.* at 125-27.

Four evidentiary hearings followed. The first was held on October 6, 2010, and focused on Wife's request that the parties' son attend acting camp in Los Angeles, California. The following day, the trial court entered an order granting Wife's request and directing the parties to pay proportional shares of the $1365 camp fee. *See* Appellee's App. p. 11. A second hearing was held on November 22, 2010, at which the parties discussed Husband's PERF annuity account and Wife's July 2009 Trial Rule 60(B) motion for relief from judgment. At this hearing, the parties informed the court that PERF had rejected the QDRO prepared by Wife because of a statutory provision prohibiting the assignment or alienation of benefits, making it impossible for Wife to receive her portion of Husband's PERF annuity account as provided in the settlement agreement.[1]

---

[1] *See* Ind. Code §§ 5-10.3-8-9, 10.

On December 10, 2010, the trial court entered an order acknowledging the PERF problem: "[A]t the time of dissolution, Husband ha[d] a vested PERF which included a defined[-]benefit pension and annuity savings account. $11,000 of Husband's PERF annuity savings plan was to have been set over to Wife by a [QDRO]. The parties agree that this was not possible under Indiana law." *Id.* at 15-16.

Ten days later, on December 20, the court entered another order addressing the PERF issue. The court explained that

> The parties intended to evenly divide Husband's PERF annuity savings account balance by [QDRO]. By mutual mistake, the parties thereby agreed to a division that was impossible to effectuate. To leave the parties in their current posture without relief would work an injustice on Wife, and in comparison to the parties' intent expressed in the Settlement Agreement, grant a windfall to Husband.

*Id.* at 18-19 (formatting altered). Noting that Wife had timely filed her July 2009 Trial Rule 60(B) motion for relief from judgment, it granted the motion, ruling that *"[T]he Decree and Settlement Agreement in this action should be modified* to evenly divide the value of Husband's PERF Annuity Savings Account . . . ." *Id.* at 19 (emphasis added). The court instructed the parties to negotiate an agreeable way to effectuate this division. *Id.*

In March and August 2011, the court held hearings on the outstanding issues raised in Wife's motion to modify or clarify—Husband's child-support obligation, extracurricular and extraordinary educational expenses, and attorney's fees. Wife asked that Husband's child-support obligation be returned to the original $200 per week, or, in the alternative, be increased. She also claimed that Husband had secured a reduction in his obligation, from $200 to $115 per week, by providing false financial information to

the trial court in 2009. Wife also asked that the court order Husband to pay certain extracurricular and educational expenses for the children, including the purchase of a laptop for the parties' son, a freshman at Indiana University. Finally, Wife requested $12,340 in attorney's fees.

The trial court granted Wife's requests in January 2012, with detailed findings of fact and conclusions of law accompanying its order. Although the trial court rejected Wife's argument that the $115 per-week support order was based on false information given by Husband, it nonetheless modified Husband's child-support obligation, increasing it to $240 per week. Appellant's App. p. 41-42. The court explained that pursuant to Indiana Code section 31-16-8-1, there had been a significant and continuing change of circumstances rendering the previous support order unreasonable. *Id.* That is, the parties' "incomes were no longer consistent with the income figures previously found by Special Judge Spencer," the children's needs, including extracurricular involvement, had increased, Husband had resumed work for a former employer, and Husband's "personal financial situation had improved due to his filing for personal bankruptcy protection." *Id.*

The trial court also identified at least five instances in which Wife had to seek court intervention or respond to later-dismissed motions filed by Husband, and incurred additional legal fees as a result. *Id.* at 36-39. The trial court ordered Husband to pay $7000 in attorney's fees to Wife, noting that "Husband makes significantly more than Wife," and had discharged a number of his debts in 2010 by filing bankruptcy. *Id.* at 42. As to another disputed issue, educational expenses, the trial court found as follows:

6

[A]s an extraordinary educational expense, [the parties' son] is in need of a Mac Book Pro computer, and the cost of the same is [$3190]. The court finds that [son] has paid [$1000] of that expense from a graduation gift from [Husband.]

*Id.* at 40-41. The court apportioned the remaining cost of the laptop to each party: $1467.30 to Husband and $722.70 to Wife. *Id.* at 41. The court also ordered that the parties were to split the cost of the son's modeling expenses evenly, per the terms of the settlement agreement, but in the future, each parent would pay pro rata shares of any extracurricular expenses in accordance with the Indiana Child Support Guidelines.

Finally, the trial court resolved the PERF issue. The court ordered that the $11,000 which was to be paid to Wife from Husband's PERF annuity account would instead come from Husband's Marion Steel pension. *Id.* at 42.

Husband now appeals.

**Discussion and Decision**

On appeal, Husband contends that the trial court erred in its treatment of his PERF annuity account. Husband also argues that the court erred by modifying his child-support obligation. Finally, Husband claims that the court erred by ordering him to pay certain extracurricular and extraordinary educational expenses and awarding attorney's fees to Wife.

Here, the trial court entered detailed findings of fact and conclusions of law. When reviewing judgments with findings and conclusions, we "shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Ind. Trial Rule 52(A). An appellate court is not to reweigh the evidence or reexamine witness

credibility, and the evidence should be viewed most favorably to the judgment. *Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011). "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Id.* (citations omitted). Deference to our trial courts, particularly in family-law matters, "is warranted because of their unique, direct interactions with the parties face-to-face, often over an extended period of time." *Id.*

## I. PERF Annuity Account

Husband challenges the trial court's treatment of his PERF annuity account, specifically its order that Wife's share of this account be paid from his Marion Steel pension. Husband contends that the trial court impermissibly modified the parties' settlement agreement when it made this award. Wife argues that Husband has waived this claim by failing to timely challenge the trial court's initial order modifying the settlement agreement and ruling that Wife was to receive her portion of Husband's PERF annuity account from a new source.

Husband challenges the trial court's January 2012 order that Wife's portion of his PERF annuity account be paid from his Marion Steel pension. *See* Appellant's Br. p. 14. While the January 2012 order does discuss Husband's PERF annuity account, this reference is derivative of the December 20, 2010, order, which clearly modified the settlement agreement and found that Wife was entitled to receive her portion of Husband's PERF annuity account from a new, unnamed source. *See* Appellee's App. p. 19 ("*[T]he Decree and Settlement Agreement in this action should be modified* to evenly divide the value of Husband's PERF Annuity Savings Account . . . .") (emphasis added).

8

Although the trial court also instructed the parties to negotiate a method of effectuating this award, thus not entirely disposing of the issue, this makes no difference. The December 20, 2010, order expressly modified the settlement agreement and ruled that Wife would receive her portion of Husband's PERF annuity account from another source. If Husband believed this was error, he should have sought Trial Rule 60(B) relief from judgment or appealed the order. He did neither, and now attempts to circumvent this failure by challenging the trial court's January 2012 order, which simply reiterated and expanded upon the December 20 order. He cannot do so. Husband has waived his challenge to the trial court's modification of the settlement agreement.[2]

## II. Child-Support Modification

Husband next contends that the trial court erred by modifying his child-support obligation because the court based the modification on a ground not raised by Wife. Thus, according to Husband, the court's "modification of the child[-]support order was without sufficient notice to [Husband] and an abuse of discretion." Appellant's Br. p. 16. We cannot agree.

Wife's motion was titled "Motion to Modify or Clarify." Appellant's App. p. 125. In this motion, Wife explicitly sought to modify or clarify the court's orders as to support for the children, including extracurricular and educational expenses. *Id.* at 125-27. Therefore, the motion itself put Husband on notice that Wife sought to modify his

---

[2] We would affirm the trial court's modification of the settlement agreement even if Husband had not waived the issue. Wife timely filed a Trial Rule 60(B) motion for relief from judgment. And, as shown by the evidence and explained by the trial court, relief was warranted due to impossibility of performance—Husband's PERF annuity account was not subject to division as the parties had agreed. *See* Ind. Code §§ 5-10.3-8-9, 10. As the court explained, failing to grant relief would result in a windfall to Husband and would be against the equal-division intent of the parties.

9

child-support obligation.  Additionally, two evidentiary hearings on Wife's motion, held in March and August 2011, were devoted solely to child-support issues.  This was sufficient to put Husband on notice that Wife was attempting to modify his child-support obligation.

Yet Husband claims that he believed his child-support obligation could increase only if Wife convinced the trial court that he had submitted false financial information at a 2009 hearing that resulted in a decrease in his obligation.  He claims he was unaware that the trial court might increase his obligation under Indiana Code section 31-16-8-1, which provides that a child-support order may be modified only:

> (1) upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable; or
>
> (2) upon a showing that:
>> (A) a party has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines; and
>>
>> (B) the order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed.

Ind. Code § 31-16-8-1.  However, Husband presented extensive evidence relevant to the statute—a large volume of documents showing his current and past income, including bankruptcy records.  And Husband's counsel argued statutory grounds at the hearings. *See* Tr. p. 204 ("They can proceed under either statutory grounds, either the one [] year and twenty [] percent, or the substantial change in circumstances.").  Husband's counsel further noted that the second modification basis did not apply: "Certainly this wasn't brought after a year.  I think that the court can take judicial notice of the calendar time.

10

So they would not qualify under that." *Id.* at 328. Husband was aware of the statutory provisions governing the court's decision and had ample notice and an opportunity to respond to Wife's request for modification.

Husband also challenges the trial court's reasoning for increasing his child-support obligation. First, he argues that the trial court should not have considered his second job when determining his obligation. In *Scoleri v. Scoleri*, we held that

> [A] trial court must carefully scrutinize a parent's second job in determining weekly gross income, and that a parent should not have to maintain a second job to satisfy a support obligation. The employment decisions a parent makes while married may not be as feasible when a parent is divorced and has visitation of his or her children. A situation can easily arise where the parent works two jobs or overtime hours to meet support obligations, but then has no time to have visitation with his or her children due to the hectic work schedule. Depending on the unique factual circumstances of a case, a parent's full-time employment or regular work hours may be appropriate for computation of child support so a parent can have visitation with his or her children.

766 N.E.2d 1211, 1220 (Ind. Ct. App. 2002) (quotations omitted). Husband, however, makes no argument that his ability to exercise parenting time has been or will be hindered by the trial court's consideration of both of his jobs. Nor does he make any other argument that this was improper based upon the unique facts of this case. Rather, he states broadly that considering both jobs is not "fair or permissible." Appellant's Br. p. 18. We do not find this persuasive.

Husband's remaining contentions also fail. He argues that "an increase in extracurricular activities cannot serve as the basis of a child[-]support modification." *Id.* However, the trial court stated that "the children's needs, including extracurricular involvement, had increased," indicating that this involvement was but one factor in the

11

larger consideration of their needs. Appellant's App. p. 41. And regarding Husband's bankruptcy, Husband correctly states that his "bankruptcy neither increased nor decreased his income." Appellant's Br. p. 18. It did, however, impact the number and extent of his debts, which has a direct impact on his financial circumstances. We conclude that the trial court did not err in modifying Husband's child-support obligation.

### III. Extracurricular and Extraordinary Educational Expenses

Husband challenges the trial court's order that he pay a portion of his son's modeling expenses. Husband's attempt to characterize this extracurricular activity as a new one is curious given the trial court's finding that both children had historically participated in modeling, making modeling the type of extracurricular activities contemplated by the parties' agreement. Appellant's App. p. 39. The court ordered that the parties were to split the cost of the son's modeling per the terms of the settlement agreement, but in moving forward, each parent would pay pro rata shares of any extracurricular expense in accordance with the Child Support Guidelines. *Id.* at 40; Ind. Child Support Guideline 8 ("When both parents agree that the child[ren] may participate in optional activities, the parents should pay their pro rata share of these expenses."). Therefore, although the trial court modified the agreement, it did so as expressly contemplated by Child Support Guideline 8. We find no abuse of discretion here.

Husband also challenges the trial court's order that he pay for a portion of his son's purchase of a laptop computer. Husband contends that the evidence showed this expense was not "a reasonable or necessary expense for the child to attend school or to meet the particular educational needs of the child." Appellant's Br. p. 20.

12

In addition to basic child-support obligations, a trial court may order additional support for extraordinary educational expenses. *Bass v. Bass*, 779 N.E.2d 582, 595 (Ind. Ct. App. 2002), *trans. denied*; Child Supp. G. 8. Indiana Code section 31-16-6-2 establishes the trial court's authority to order parents to pay educational expenses as part of a child-support order. If the child is pursuing postsecondary education, such an order must take into account the child's aptitude and ability to engage in such educational activities; his ability to contribute to his own educational expenses through work, loans, or other financial aid available to the child and his parents; and the ability of the parents to meet these expenses. Ind. Code § 31-16-6-2(a)(1).

Interpreting Section 31-16-6-2, the Child Support Guidelines discuss what extraordinary educational expenses may be included in a child-support order. "Extraordinary educational expenses . . . should be limited to reasonable and necessary expenses for attending . . . institutions of higher learning . . . to meet the particular educational needs of the child." Child Supp. G. 8. "A determination of what constitutes educational expenses will be necessary and will generally include tuition, books, lab fees, supplies, student activity fees and the like. . . ." Child Supp. G. 8(b).

Here, the trial court found that the parties' son, a freshman studying telecommunications at Indiana University, was in need of an extraordinary educational expense: a MacBook Pro laptop computer.

There is sufficient evidence to establish the aptitude and ability of the parties' son, as well as his ability to contribute to the laptop expense. The child enrolled in courses at Indiana University, where he received more than $15,000 in scholarships. He financed

half of his remaining educational expenses through grants and loans. The trial court attached a post-secondary educational support worksheet to its order, detailing these expenses and apportioning costs between Wife and Husband after noting their son's share. Exhibits, Vol. 1 p. 222. The trial court also had before it numerous documents detailing the parents' income. When considering the cost of the laptop, the trial court considered all of this information and attributed $1000 of this expense to the son. The court then apportioned the remaining cost between the parents—$1467.30 to Husband and $722.70 to Wife.

The record before us reveals ample evidence from which the trial court could have properly determined the child's aptitude and ability; ability to contribute to educational expenses through work, obtaining loans, and obtaining other sources of financial aid reasonably available to the child and each parent; and the ability of each parent to meet these expenses. We therefore find that the court did not abuse its discretion in ordering Husband to pay a portion of this cost.

Husband also challenges the necessity of the laptop, arguing that there are computer labs and other computing options available at the son's university. Appellant's Br. p. 21. This is an invitation to reweigh the evidence, which we may not do.

## IV. Attorney's Fees

Finally, Husband contends that the trial court erred by awarding Wife attorney's fees. In post-dissolution proceedings, the trial court may order a party to pay a reasonable amount for attorney's fees. *Bessolo v. Rosario*, 966 N.E.2d 725, 733 (Ind. Ct. App. 2012), *trans. denied*; Ind. Code § 31-15-10-1. The trial court has broad discretion in

14

awarding attorney's fees. *Bessolo*, 966 N.E.2d at 733. Reversal is proper only where the trial court's award is clearly against the logic and effect of the facts and circumstances before the court. *Id.* In assessing attorney's fees, the trial court may consider such factors as the resources of the parties, the relative earning ability of the parties, and other factors bearing on the reasonableness of the award. *Id.* In addition, any misconduct on the part of a party that directly results in the other party incurring additional fees may be taken into consideration. *Id.* Further, "the trial court need not give its reasons for its decision to award attorney's fees." *Id.*

The basis for the award of attorney's fees here stems from Husband's behavior throughout these proceedings. In its findings of fact, the trial court identified at least five instances between 2009 and 2011 in which Wife had to seek court intervention or respond to later-dismissed motions filed by Husband, and incurred additional legal fees as a result. Appellant's App. p. 36-39. Husband argues the trial court was not entitled to consider this legal history; rather, he contends, the court could only consider the immediately underlying motion and any expense associated with it. Notably, Husband provides no authority for this contention and our research reveals the contrary—that this is a common and proper consideration. *See D.B. v. M.B.V.*, 913 N.E.2d 1271, 1276 (Ind. Ct. App. 2009), *reh'g denied*; *Thompson v. Thompson*, 811 N.E.2d 888, 928 (Ind. Ct. App. 2004), *reh'g denied*, *trans. denied*; *Hendricks v. Hendricks*, 784 N.E.2d 1024, 1028 (Ind. Ct. App. 2003); *Bass*, 779 N.E.2d at 595.

We also reject Husband's argument that the trial court did not consider the parties' economic circumstances. At hearings on Wife's motion to modify and clarify, Husband

and Wife submitted hundreds of pages of documents pertaining to their respective economic circumstances. Among these documents were child-support worksheets, post-secondary education expense worksheets, tax returns, pay stubs, and salary summaries. We are confident that the trial court considered these materials when determining whether attorney's fees were appropriate because it referenced the parties' financial circumstances in its order. Appellant's App. p. 42 (noting that Husband's income was greater than Wife's and that Husband had discharged a number of his debts in 2010 by filing bankruptcy). We conclude the trial court did not err by awarding attorney's fees to Wife.

Affirmed.

MATHIAS, J., and BARNES, J., concur.