

**FILED**
Mar 12 2015, 9:51 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Jacob D. Winkler
Katherine J. Noel
Noel Law
Kokomo, Indiana

ATTORNEY FOR APPELLEE

Dan J. May
Kokomo, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Ronald Fritts,

*Appellant-Respondent,*

v.

Linda Fritts,

*Appellee-Petitioner.*

March 12, 2015

Court of Appeals Cause No.
34A02-1405-DR-361

Appeal from the Howard Superior
Court
Cause No. 34D04-0807-DR-809

The Honorable Thomas R. Lett,
Special Judge

**Barnes, Judge.**

# Case Summary

Ronald Fritts appeals the trial court's ruling on a motion for relief from judgment filed by his ex-wife, Linda Christopher.[1] Linda cross-appeals, challenging the trial court's resolution of other issues raised by the parties post-dissolution. We affirm in part, reverse in part, and remand.

# Issues

Ronald raises one issue, which we restate as:

> I. whether the trial court properly declined to credit Linda with his proposed value of his pension's surviving spouse benefit.

On cross-appeal, Linda raises five issues, which we restate as:

> II. whether the trial court's calculation of Linda's child support arrearage failed to take into account a set-off included in the 2010 dissolution order;
>
> III. whether the trial court properly calculated outstanding medical expenses owed by Linda;
>
> IV. whether the trial court properly found that Ronald complied with the dissolution order when he paid Linda's previous attorney $4,000.00;
>
> V. whether the trial court properly declined to credit Linda for various accounts; and

---

[1] In the order dissolving the marriage, Linda's last name was restored to Christopher.

> VI. whether Linda is entitled to appellate attorney
> fees based on Indiana Appellate Rule 66(E).

# Facts

Ronald and Linda were married in 1993. During the marriage, Ronald adopted one of Linda's daughters, Kelsey, who is now emancipated. The couple separated in June 2008, and, on July 16, 2008, Linda petitioned for dissolution of the marriage.

In December 2008, during the dissolution proceedings, Ronald retired from Delphi. When he retired, he elected a surviving spouse benefit. As a result of Delphi's bankruptcy, administration rights of Ronald's pension were transferred to PBGC, and Ronald's pension was reduced. A February 2, 2010 letter from PBGC to Ronald indicated that, as of July 31, 2009, Ronald's current monthly benefit of $5,298.64 would be reduced to an estimated monthly benefit of $3,909.37. The letter also explained that the monthly surviving spouse benefit was estimated to be $2,541.09 upon Ronald's death and, if Linda predeceased Ronald, Ronald's monthly benefit would increase by $163.87.

On December 14, 2009, the trial court issued an order dissolving the marriage and indicating that the remaining issues would be resolved in a bifurcated final hearing. On May 28, 2010, following a March 2010 hearing, the trial court issued a final dissolution order. It explained that, during the course of the proceedings, neither party obeyed the trial court's orders to pay child support for Kelsey. The trial court subtracted the amount Ronald owed from the amount Linda owed, which left Linda an outstanding balance of $2,310.00.

The trial court then subtracted that amount from Linda's share of the marital estate. Regarding uninsured medical expenses for Kelsey, Ronald was required to pay the first 6%, and the balance was to be split between the parties, with Ronald paying 77% and Linda paying 23%.

[7] The trial court found "that an equal division of the marital property between the parties is just and reasonable. To divide the marital property, [Linda] is awarded a judgment against [Ronald] in the amount of $48,705.55." Appellant's App. p. 30. In its division of property, the trial court awarded Linda a Solidarity checking account and Ronald various Key Bank accounts. The trial court ordered Ronald "to pay a portion of [Linda's] attorney fees in the amount of $4,000.00 within forty five (45) days." *Id.*

[8] The trial court found that Linda was "entitled to one half of the value of the pension based upon the coveture [sic] fraction formula." *Id.* A pension analysis prepared by the parties valued the marital property portion of Ronald's $771,923.28 pension at $283,182.97. The trial court required Linda's attorney to prepare any documents necessary to carry out the order. The trial court also denied Linda's "motion to require [Ronald] to execute a surviving spouse option." *Id.* The trial court's order made no mention of the surviving spouse benefit that Ronald had already elected.

[9] Linda appealed, challenging the date the trial court used to value certain assets and the trial court's calculation of child support. We affirmed the trial court's

order. *See Christopher v. Fritts*, No. 34A04-1008-DR-508 (Ind. Ct. App. March 23, 2011), *trans. denied*.

[10]     Ronald made no payments to Linda as required by the order as to either the property equalization payment or the pension. Despite efforts by both parties, the parties agree that Ronald is unable to remove the surviving spouse benefit from his pension plan. The parties filed numerous motions related to the dissolution order, including Linda's motion for relief from judgment, motion for proceedings supplemental, and several summary judgment motions related to the pension. On January 13, 2014, the trial court held a hearing on all pending motions. Both Linda and Ronald testified, and both parties offered numerous exhibits. Ronald testified that, based on Social Security Administration actuarial data of their respective life expectancies and his own calculations, Linda would outlive him by sixteen years and would receive surviving spouse benefits totaling $487,889.00.

[11]     Following the hearing, the trial court issued an order, which provided in part:

> 8.     [Ronald] and [Linda] attempted to resolve the issue of eliminating the surviving spouse election with the PBGC . . . . This was unsuccessful.
>
> 9.     The result of the PBGC's refusal to eliminate the surviving spouse benefit has created a drastic deviation from the Court's Ruling on May 28, 2010.
>
> 10.     [Ronald's] pension benefit without the surviving spouse election, would have been $5,298.64. However, due to the surviving spouse election, [Ronald's] pension is only $3,909.37. Thus, due to the fact that the PBCG [sic] will not honor the Court's Ruling,

[Ronald's] pension has been reduced by $1,389.27 per month (pursuant to PBGC calculations provided by both counsel).

11.     The court cannot attempt to estimate the value of any "windfall" to [Linda]. To do so would be speculative and considering facts not in evidence. The coverture fraction formula was Ordered by the trial court and was not appealed. The parties are bound by that Order. [Ronald] is not entitled to credit for any "windfall" created by the pension issue.

12.     [Linda] was further Ordered to pay [Ronald] support pursuant to the May 28, 2010 Ruling. She has failed to pay any support and has an arrearage in the sum of $9,460.00. [Linda] was also ordered to pay medical bills, which she did not. [Linda's] share of the medical bills was $1,074.00.

13.     [Ronald] was awarded certain accounts with Key Bank, pursuant to the May 28, 2010 Ruling. [Ronald] alleged, and [Linda] admitted, she took funds from these accounts in the sum of $5,132.01.

* * * * *

15.     In order to effectuate a 50/50 division of the marital assets, the May 28, 2010 Ruling awarded a Judgment to be paid by [Ronald] to [Linda] in the sum of $48,705.55. Interest in the sum of $14,155.30 had accrued as of the hearing. The total sum owed to [Linda] is $62,860.85.

16.     The attorney fees Ordered paid to [Linda's] attorney has been paid to Mark Dabrowski, which the court finds complies with the court's Order.

17.     The court finds that this Order effectively resolves all pending motions, including any Motions for Summary Judgment.

Appellant's App. pp. 23-24. The trial court explained that Ronald owed Linda $62,860.85 for the 2010 judgment and interest and $43,131.00 for the pension arrearage, for a total of $105,991.05. The trial court found that Linda owed

Ronald $32,858.00 for the equity in the marital residence,[2] $10,534.00 for child support and medical bills, $600.00 for an appraisal fee, and $5,132.01 for the Key Bank accounts, for a total of $49,124.01. Setting off the amount Linda owed Ronald, the trial court ordered Ronald to pay Linda $62,860.05. The trial court also ordered the parties to pay their own attorney fees. Both parties now appeal.

## Analysis

[12] Pursuant to Linda's request, the trial court issued written findings and conclusions. When reviewing such, we "shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Ind. Trial Rule 52(A). We neither reweigh the evidence nor reassess witness credibility, and we view the evidence most favorably to the judgment. *Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011). "'Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference.'" *Id.* (quoting *Yanoff v. Muncy,* 688 N.E.2d 1259, 1262 (Ind. 1997)). "Appellate deference to the determinations of our trial court judges, especially in domestic relations matters, is warranted because of their unique, direct

---

[2] Although there have been several post-dissolution disputes regarding the sale of the marital residence, neither party appeals the trial court's resolution of that issue.

interactions with the parties face-to-face, often over an extended period of time." *Id.*

## *I. Pension*

[13]   Ronald contends that the trial court's 2010 dissolution order is no longer just and reasonable because of the inability to eliminate the surviving spouse benefit, which, according to him, reduces his monthly pension benefit from $5,298.64 to $3,909.37 and creates a windfall for Linda. Ronald contends that the trial court should have given him credit toward any judgment he owes Linda based on what she might receive from the surviving spouse benefit after he dies.

[14]   In response, Linda claims Ronald was made aware that the surviving spouse benefit could not be eliminated in June 2010 and did not appeal, file a motion to correct error, or file his own motion for relief from judgment pursuant to Indiana Trial Rule 60(B). Ronald claims that he had no reason to appeal the dissolution order because it was favorable regarding the surviving spouse benefit. Although the dissolution order denied Linda's motion to require Ronald "to execute a surviving spouse option," it did not address the surviving spouse benefit that Ronald had elected upon his retirement in 2008 while the dissolution proceeding was pending. Appellant's App. p. 30.

[15]   Correspondence between Ronald and PBGC indicates that on February 10, 2010, after the marriage was dissolved but before the property issues were

resolved, Ronald sought to remove the surviving spouse benefit and that on June 3, 2010, PBGC informed Ronald:

> If you elected the normal form of benefit for a married participant before the plan ended, the plan would have permitted you to change your benefit to a straight-life annuity if your marriage ended in divorce and your former spouse agreed, and then revert back to a joint-and-65%-survivor annuity if you remarried. PBGC will not allow these changes, but we will honor such changes made before the plan ended.

Appellee's App. p. 76.[3] Because this letter was issued within days of the May 28, 2010, dissolution order, it appears the irrevocability of the surviving spouse benefit and the attempt to credit Linda for the potential proceeds of the benefit could have been raised by Ronald in a motion to correct error. *See* Ind. Trial Rule 59 (requiring that a motion to correct error be filed within thirty days after the entry of a final judgment).

[16] To the extent the irrevocability of the surviving spouse benefit was learned later, Ronald could have pursued relief from the dissolution order pursuant to Trial Rule 60(B). *See Evans v. Evans*, 946 N.E.2d 1200, 1206 (Ind. Ct. App. 2011) (concluding that the trial court properly recast a motion to compel payment following a dissolution order that was legally impossible to implement as a Trial Rule 60(B) motion); *Case v. Case*, 794 N.E.2d 514 (Ind. Ct. App. 2003) (reviewing a motion to modify a dissolution decree as Trial Rule 60(B) motion

---

[3] Although the certified PBGC records were not offered or admitted at the 2014 hearing, it appears that the trial court had taken judicial notice of them at a previous hearing. While the case was being briefed, the trial court approved an agreement by the parties that "The Record of Proceedings should be corrected and supplemented to include the missing pages of Exhibit O and/or all of the certified PBGC records." Appellant's Supplemental App. p. 4.

for relief from judgment). Ronald claims that he was not required to seek relief from judgment pursuant to Trial Rule 60(B) because Linda did. In support of his argument, he relies on the general proposition that, although a trial court may modify its property division decree under Trial Rule 60(B), it may not do so without a motion by a party and without a hearing. *See Poppe v. Jabaay*, 804 N.E.2d 789, 795 (Ind. Ct. App. 2004) (concluding that because wife did not file a Trial Rule 60(B) motion, the trial court had no authority to modify its decree under that Rule), *trans. denied, cert. denied*. Ronald contends, it is of no consequence that Linda filed the motion for relief from judgment and he requested his own relief at the hearing because "[a]ll that is required is that 'a party' file the motion." Appellant's Reply and Cross-Appellee Br. pp. 3-4.

[17] Unlike in *Poppe*, the issue here is not whether the trial court had the authority to modify the dissolution decree under Trial Rule 60(B). It is whether Ronald was required to file his own motion seeking relief. We conclude he was.

[18] Linda's 2011 motion for relief from judgment was based on PBGC's refusal to pay Linda her share of the pension, not the parties' inability to eliminate the surviving spouse benefit. Certainly, Linda did not ask the trial court to credit her $487,889.00 based on Ronald's calculation of the surviving spouse benefit as was Ronald's position at the January 2014 hearing.

[19] Trial Rule 60(B) has several avenues for relief with different time limitations and in some instances requires the allegation of a meritorious claim or defense. "'The burden is on the movant for relief from judgment to demonstrate that the

relief is both necessary and just.'" *Welton v. Midland Funding, LLC,* 17 N.E.3d 353, 355 (Ind. Ct. App. 2014) (citation omitted). If we were to conclude that Ronald was not required to file his own motion for relief from judgment, he would essentially be to able avoid his burden of showing that his request for relief was timely and that the relief he requested is required pursuant to Trial Rule 60(B).[4] We will not do this. Because Ronald did not file his own motion for relief from judgment, he cannot now challenge the trial court's decision not to credit Linda with the proceeds she might someday receive from the surviving spouse benefit.

## II. Child support Arrearage

[20]     Linda argues the trial court erroneously included $2,310.00 in her child support arrearage. Linda does not dispute the finding that she has a child support arrearage of $9,460.00 but contends that $2,310.00 of that amount was credited to Ronald in the dissolution order. Ronald agrees that the dissolution order credited him for $2,310.00 of the arrearage, and the parties and trial court acknowledged this at the 2014 hearing. Specifically, the trial court asked Ronald's attorney if Linda owed Ronald "9460 minus 2310." Tr. p. 72. Ronald's attorney responded, "Yeah, I'm sure [Linda's attorney] will point that out in his written findings that he presents to the Court." *Id.* Thus, we must

---

[4] Given that Ronald has not paid any of the 2010 judgment to Linda and is now asking that she be credited for the proposed proceeds of the surviving spouse benefit, we are not persuaded by his claim that he was not seeking relief from judgment and that he "has only tried to *enforce*" the dissolution order. Appellant's Reply and Cross-Appellee Br. p. 4.

conclude that the setoff for child support arrearage in the amount of $9,460.00 erroneously includes $2,310.00 that had already been accounted for in the dissolution order.

### III.  Medical Expenses

[21]  At the hearing, Ronald claimed that Linda had failed to pay her portion of Kelsey's uninsured medical expenses.  When questioned about the unpaid medical expenses, Linda testified that the expenses submitted to the trial court "included duplicate and triplicate bills and they included bills that were for Ronald Fritts instead of Kelsey Fritts."  Tr. p. 23.  At the conclusion of the hearing, Ronald offered an exhibit containing forty-five pages of medical bills to support his request.  Linda's attorney explained that he had not had the opportunity to review the calculation, and the parties agreed that the exhibit would be admitted into evidence and they would present arguments regarding such in their proposed orders.  In his proposed order, Ronald claimed he was owed $1,074.00 in medical expenses.  In her proposed order, Linda claimed she only owed $54.25 and included an exhibit explaining her calculation.  In its order, the trial court found that Linda owed $1,074.00 for her share of medical bills.

[22]  Linda argues on appeal that Ronald's exhibit includes duplicate bills and services provided to him.[5]  Because the exhibit does appear to contain duplicate

---

[5]  This exhibit contains numerous post-it notes with handwritten notes marking duplicate bills and Ronald's bills.  There is no indication that these notes were included on the bills when the exhibit was admitted into

bills and to include services provided to Ronald, we remand for the trial court to recalculate Linda's unpaid medical expenses to ensure that the amount owed does not include duplicate bills or services provided to Ronald.

### IV. 2010 Attorney Fee Order

[23] Linda argues that the trial court improperly credited Ronald for the $4,000.00 he paid directly to Linda's previous attorney. As a procedural matter, Linda claims that the trial court should not have heard evidence on this issue because she filed a motion for summary judgment in 2011 and a motion in limine in 2012 seeking to prevent the taking of evidence on this issue.[6]

[24] During the 2014 hearing, after questioning Linda about the payment of the $4,000.00, Linda's attorney referenced the motion for summary judgment and motion in limine. The trial court indicated that the motion for summary judgment had not been ruled on and suggested that, because Linda had testified, they include the issue "as part of today's evidence and today's order." Tr. p. 27. Linda's attorney responded, "That would be fine." *Id.* Accordingly, Linda may not now argue that Ronald did not properly respond to her motion for summary judgment.

---

evidence. Accordingly, we have removed the notes and have not considered them in our review of this issue. *See Schaefer v. Kumar*, 804 N.E.2d 184, 187 (Ind. Ct. App. 2004) (explaining that we cannot consider matters outside the record on appeal), *trans. denied*.

[6] None of the summary judgment pleadings nor the motion in limine are included in Linda's appendix.

In the 2014 order, the trial court found, "The attorney fees Ordered paid to [Linda's] attorney has been paid to Mark Dabrowski, which the court finds complies with the court's Order." Appellant's App. p. 24. This is consistent with Ronald's testimony that he paid Linda's trial attorney directly. This testimony was supported by a canceled check to Mark Dabrowski, Linda's previous attorney, dated June 10, 2010, and deposited on June 18, 2010. Linda also testified that Dabrowski had not billed her the $4,000.00.

Relying on Indiana Code Section 31-15-10-1(b), which provides, "The court may order the amount to be paid directly to the attorney, who may enforce the order in the attorney's name[,]" Linda argues that Ronald is not entitled to a credit for his payment because the trial court did not order him to pay Dabrowski directly. We are not persuaded. The 2010 dissolution order required Ronald "to pay a portion of [Linda's] attorney fees in the amount of $4,000.00 within forty five (45) days[.]" Appellant's App. p. 30. The evidence shows that Ronald did this. Linda has not established that the trial court's finding on this issue was clearly erroneous.

## V. Accounts

Linda contends that, because the trial court gave Ronald credit for the $5,132.01 decrease in the Key Bank accounts, the trial should have credited her for the decreased value of the Solidarity checking account and for her payment on other debts. In the dissolution order, Ronald was awarded a Key checking account with a balance of $4,133.60. Ronald testified at the 2014 hearing that from May 2010 to July 2010, the value of that account was reduced from

$7,687.01 to zero and requested that he be awarded the $4,133.60. Bank statements were admitted in support of Ronald's testimony. Ronald also testified that a Key Bank money market account and Key Bank cash reserve account were "emptied" around the same time. Tr. p. 93. Linda testified that she owed Ronald $4,133.00.

[28] Linda argued, however, that Ronald owed her $5,994.72 for payments she had made on credit cards and other debts and for the reduced value of the Solidarity checking account that she received in the dissolution order. Linda offered no evidence to support this claim other than a summary of her testimony on this point. Regarding the Solidarity checking account, Ronald testified that he set up his own accounts when he moved out, that he did not use anything from that account, and that he did not know the balance of the account when Linda finally received it.

[29] The evidence suggests that Ronald's accounts were intentionally depleted by Linda, and Linda does not direct us to evidence suggesting that Ronald did the same. Any discrepancy in the trial court's valuation of Linda's accounts is attributable to Linda's failure to clearly provide the necessary information regarding the accounts at the time of dissolution. In the dissolution order, the trial court stated:

> While this matter was pending both parties made expenditures and financial decisions that were not in accordance with the rulings of the Court. The parties did not readily share financial information with each other. The parties did not present an accurate accounting of their

activities to the Court. The Court is not able to unravel this tangled financial web.

Appellant's App. p. 30. Without more, Linda has not established that the trial court's decision to not credit her for the difference in value in the various accounts was clearly erroneous.

## VI. Appellate Attorney Fees

[30] Finally, Linda requests appellate attorney fees pursuant to Indiana Appellate Rule 66(E), which provides for the assessment of "damages if an appeal, petition, or motion, or response, is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorneys' fees. . . ." We will only assess damages where an appellant, acting in bad faith, maintains a wholly frivolous appeal. *Bessolo v. Rosario*, 966 N.E.2d 725, 734 (Ind. Ct. App. 2012), *trans. denied.* Although Appellate Rule 66(E) permits us to award damages on appeal, we must act with extreme restraint in this regard due to the potential chilling effect on the exercise of the right to appeal. *Id.* To prevail on her claim, Linda must show that Ronald's contentions and arguments on appeal are utterly devoid of all plausibility. *See id.*

[31] Ronald is unsuccessful in his appeal; however, we cannot conclude that his claim is utterly devoid of all plausibility. Indeed, although the litigious nature of these proceedings seems never-ending, it is not Ronald alone who bears responsibility for such. Under these circumstances, appellate attorney fees are not warranted.

# Conclusion

[32] Ronald knew or should have known that the surviving spouse benefit could not be revoked as early as June 2010, and he was required to take action pursuant to the Indiana Trial Rules to modify the judgment. Because he did not do so, he may not argue on appeal that the trial court's decision not to credit Linda for the surviving spouse benefits she might receive is clearly erroneous. Because the record shows that Ronald was improperly credited a second time for $2,310.00 of Linda's child support arrearage and is not clear regarding the uninsured medical expenses, we remand for the trial court to correct the arrearage and to reevaluate the medical expenses claimed by Ronald. Linda has not established that the trial court's order was clearly erroneous regarding the payment of trial counsel's attorney fees and the valuation of the accounts at dissolution. She also has not established that appellate attorney fees are warranted. We affirm in part, reverse in part, and remand.

[33] Affirmed in part, reversed in part, and remanded.

May, J., and Pyle, J., concur.