Todd H. PHILLIPS, Appellant–Respondent,

v.

Dee Anne (Phillips) DELKS, Appellee–Petitioner.

No. 06A05–0612–CV–744.

Court of Appeals of Indiana.

Feb. 13, 2008.

Todd H. Phillips, Zionsville, IN, pro se Appellant.

Elizabeth I. Van Tassel, Ryan H. Cassman, Coots, Henke & Wheeler, P.C., Carmel, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Todd H. Phillips ("Husband"), *pro se,* appeals the trial court's finding that he is in contempt of the Decree of Dissolution of Marriage, which dissolved his marriage to former wife Dee Anne (Phillips) Delks ("Wife"), for failing to immediately cure the deficiencies on the parties' rental properties and to timely complete other obligations under the parties' settlement agreement. He also appeals the trial court's award of $25,000.00 for damage to Wife's credit. We affirm the trial court's contempt finding but reverse the award of damages because Wife offered no evidence in support of her damages claim. We therefore affirm in part, reverse in part, and remand for a calculation of reasonable appellate attorney fees in favor of Wife.

### Facts and Procedural History

Husband and Wife were married in 1998. On July 20, 2005, Husband, represented by counsel, filed a Petition for Dissolution of Marriage. At the final hearing on January 26, 2006, the parties, each represented by counsel, came to a verbal agreement regarding disposition of the marital assets and debts, which was later reduced to a writing called the Agreement of Settlement ("Agreement"). Both parties, still represented by counsel, executed the Agreement on March 9, 2006. On March 15, 2006, the trial court issued the Decree of Dissolution of Marriage ("Decree"), which incorporated the Agreement. Paragraph I(A)(2) of the Agreement provides:

> 2. *Rental Properties at 523 S. Edgehill, Indianapolis; 4109 Arquette Ct., Indianapolis; and 2333 N. Goodlet Avenue, Indianapolis.* The parties currently

own rental properties located at 523 S. Edgehill, Indianapolis, Marion County, Indiana, 4109 Arquette Ct., Indianapolis, Marion County, Indiana, and 2333 N. Goodlet Ave., Indianapolis, Marion County, Indiana which residences are jointly deeded to the parties. Husband shall assume and does agree to pay any and all mortgage or other debt as well as any other debt associated with these properties, *including an immediate cure of any outstanding deficiency* and Husband agrees to indemnify against loss and hold the Wife harmless from the mortgage or other debt on these properties. Husband shall have three (3) years (until January 26, 2009) to either refinance or sell the properties and remove Wife's name from the indebtedness. Wife agrees to execute Quitclaim Deeds for the properties within ten (10 days) from the date of the decree or upon receipt of such deeds from Husband's counsel whichever is later. This Court shall have continuing jurisdiction over this action until Husband sells or refinances. In the event Husband defaults on any mortgages (not otherwise in default, or deemed to be in default as of January 26, 2006,) or obligation associated with the rental properties (including a failure to cure all outstanding deficiencies) causing late fees, finance charges, or any other financial detriment which could negatively affect Wife's credit, Wife can petition the Court for an Order to obtain an immediate sale of the properties for the amount then owed.

Appellee's App. p. 17 (emphasis added). In addition to addressing the rental properties, the Agreement provided, among other things, that Husband was responsible for the debt on the 2001 Volkswagen Jetta,[1] for his portion of the marital coun-

---

1. This provision of the Agreement provides:

Wife agrees that Husband shall become

seling bill,[2] for the outstanding tax liability for 2001 and 2004,[3] and for filing the 2005 taxes by March 15, 2006, with Wife having an opportunity to review the returns before they were filed.[4]

On June 1, 2006,[5] Wife filed a Verified Petition for Rule to Show Cause. In the petition, Wife alleged that Husband was "in contempt for violating the Settlement Agreement heretofore entered by this Court on March 15, 2006." *Id.* at 26. Specifically, Wife claimed that Husband "is in default in the mortgage payments for two (2) rental properties," that payments have been missed on the Jetta loan, that Husband has failed to pay the counseling bill and outstanding tax liability, and that Husband filed for an extension for the taxes and did not obtain Wife's consent. *Id.* at 27–29. Wife sought "damages from Husband for the detriment he has caused to her credit rating due to his failure to pay the obligations he is responsible for pursuant to the terms of the Settlement Agreement." *Id.* at 29. Wife also asked for the rental properties and Jetta to be sold and for attorney fees.

Following a two-day hearing on August 17 and 30, 2006, at which Husband represented himself, the trial court issued an Order on November 24, 2006, which provides, in pertinent part:

1. The Court finds that Husband has failed to comply with the terms of the Decree and did not immediately cure the deficiencies on the rental properties as required by paragraph I(A)(2) of the Agreement of Settlement. Furthermore, Husband's failure is not excusable since he had adequate funds, including, rental income with which to meet these obligations. Therefore, Husband is found in contempt of the Decree. Husband also failed to timely complete other obligations under the Decree, including, the timely preparation and filing of the 2005 tax return and IRS tax liens, his VW payment and counseling bill. Furthermore, Wife has been damaged financially as a result of Husband's conduct. Therefore, Wife is hereby awarded Twenty–Five Thousand Dollars ($25,000.00) in monetary damages, plus attorney's fees in the amount of Five Thousand Seventy–Eight Dollars and Ninety–Nine Cents ($5,078.99), which have been incurred in bringing this Contempt Petition against Husband and for her attorney's efforts in connection with the foreclosure actions on the

---

or continue to be the sole owner of all tangible and intangible personal property identified below:

 a. The 2001 V W Jetta VR 6 automobile which Husband has been and is currently using as his personal vehicle, along with the outstanding debt on the automobile.

Appellee's App. p. 18.

2. This provision of the Agreement provides, "In addition, Husband shall pay the outstanding bill for his portion of the parties['] marriage counseling within ten (10) days of the date this Agreement is signed by the parties." *Id.* at 20.

3. This portion of the Agreement provides, "Additionally, Husband shall pay or resolve the issues with the I.R.S. regarding any out-standing tax liability for 2001 & 2004 which liabilities are estimated at Five Hundred Dollars ($500.00)." *Id.*

4. This provision of the Agreement provides:

 The parties shall file joint Federal and State income tax returns for the tax year of 2005 by March 15, 2006. Wife will provide Husband her documentation necessary for the accountant to prepare such returns and Wife shall have an opportunity to review the returns before they are electronically filed and to discuss the same with the tax preparer.

*Id.* at 21.

5. The petition is filestamped June 1, 2006; however, the CCS reveals that it was sent by certified mail on May 31.

three (3) rental properties wherein the Default Judgment was set aside and the other foreclosure action was dismissed. Said monies owed to Wife and her attorney shall become a judgment against the Husband and in favor of Wife and/or her attorney, Elizabeth I. Van Tassel, Coots Henke & Wheeler, P.C. effective the date this Order is approved. Husband is ordered to pay these amounts to Wife and her attorney within sixty (60) days.

2. The Court finds that Husband is hereby ordered to either sell or refinance the 2001 Volkswagen Jetta within sixty (60) days. Upon sale or refinance of this vehicle, Husband is ordered to immediately pay off the loan balance due and owing on this vehicle.

3. The Court finds that the property located at 4109 Arquette Ct., Indianapolis, Indiana shall remain on the market for sale until it sells. It shall continue to be listed for Sixty–Nine Thousand Dollars ($69,000.00). In the event this property is not sold by November 1, 2006, the price shall be reduced by Five Thousand Dollars ($5,000.00) each month until the price has reached Forty–Five Thousand Dollars ($45,000.00), which should be sufficient to cover the costs of the sale and the mortgage balance.

4. The Court finds that the proceeds from the sale of the Arquette property are to be deposited with the Boone County Clerk and used first to satisfy any judgment remaining unpaid by Husband and owed to Wife or her attorney.

Appellee's App. p. 4–5.[6] Husband, *pro se*, now appeals.

6. We cite to Wife's appendix because Husband did not number the pages in his appendix. Indiana Appellate Rule 51(C) provides: "All pages of the Appendix shall be numbered

### Discussion and Decision

In his sixty-one page brief, Husband, *pro se*, raises thirteen issues, which we condense and restate as: (1) whether the trial court erred in finding him in contempt of the Decree for failing to immediately cure the deficiencies on the rental properties as required by the Agreement, (2) whether the trial court erred in awarding Wife $25,000.00 in damages because Wife did not submit evidence to support the award, (3) whether the trial court erred in ordering the sale of the remaining rental property and the sale or refinance of the Jetta because it modified the parties' Agreement, (4) whether the trial court erred in finding him in contempt of the Decree for failing to satisfy the outstanding tax liability, (5) whether the trial court erred in scheduling a telephonic conference for a date after the issuance of the contempt order, and (6) whether the trial court awarded excessive trial attorney fees and whether appellate attorney fees are proper.

### I. Deficiencies on Rental Properties

█ Husband contends that the trial court erred in finding him in contempt of the Decree for failing to immediately cure the deficiencies on the rental properties as required by paragraph I(A)(2) of the Agreement. He argues that the Agreement is ambiguous and, therefore, he cannot be found in contempt of the Decree.

█ In order to be held in contempt for failing to follow a court's order, a party must have willfully disobeyed the order. *City of Gary v. Major*, 822 N.E.2d 165, 170 (Ind.2005) (citing *Ind. High Sch. Athletic Ass'n v. Martin*, 765 N.E.2d 1238, 1241 (Ind.2002)). "The order must have been

at the bottom consecutively, without obscuring the Transcript page numbers, regardless of the number of volumes the Appendix requires."

so clear and certain that there could be no question as to what the party must do, or not do, and so there could be no question regarding whether the order is violated." *Id.* (citing *Martin,* 765 N.E.2d at 1241). "A party may not be held in contempt for failing to comply with an ambiguous or indefinite order." *Id.* "Otherwise, a party could be held in contempt for obeying an ambiguous order in good faith." *Id.* (citing *Bowyer v. Ind. Dep't of Natural Res.,* 798 N.E.2d 912, 918 (Ind.Ct.App.2003)). The determination of whether a party is in contempt of court is a matter left to the trial court's discretion. *Id.* at 171 (citing *Hancz v. City of South Bend,* 691 N.E.2d 1322, 1324 (Ind.Ct.App.1998)). We will reverse a trial court's finding of contempt only where there is no evidence or inferences therefrom to support it. *Id.* As with other sufficiency matters, we will neither reweigh evidence nor judge witness credibility. *Mitchell v. Mitchell,* 871 N.E.2d 390, 394 (Ind.Ct.App.2007).

Paragraph I(A)(2) of the Agreement provides, in pertinent part: "Husband shall assume and does agree to pay any and all mortgage or other debt as well as any other debt associated with these [rental] properties, *including an immediate cure of any outstanding deficiency* and Husband agrees to indemnify against loss and hold the Wife harmless from the mortgage or other debt on these properties." Appellee's App. p. 17 (emphasis added). On appeal, Husband argues that because Paragraph I(A)(2) "calls for 'immediate' compliance rather than setting out a date certain for compliance, the paragraph is ambiguous, indefinite, non-specific and equivocal." Appellant's Br. p. 12. Therefore, Husband's argument continues, he cannot be found in contempt for violating the Decree. Thus, we must determine whether "immediate" as used in the Agreement is ambiguous.

Indiana courts have found an implied "reasonableness" time requirement when they have been called upon to define the word "immediate" in a statute or contract. *Oxford Fin. Group, Ltd. v. Evans,* 795 N.E.2d 1135, 1144 (Ind.Ct.App.2003). Specifically, "immediate" has been defined as " 'the act referred to shall be accomplished within such convenient time as is reasonably requisite.' " *Id.* (quoting *Gross Income Tax Dep't of Treasury v. Harbison–Walker Refractories Co.,* 113 Ind.App. 695, 48 N.E.2d 834, 836 (1943)); *see also Pac. Mut. Life Ins. Co. v. Branham,* 34 Ind.App. 243, 70 N.E. 174, 176 (1904) ("It has been held in this state that 'immediate' means within a reasonable time under the circumstances. The construction as given generally by the courts to the words 'immediately' and 'forthwith,' when they occur in contracts or in statutes, is that the act referred to should be performed within such convenient time as is reasonably requisite.") (quotation and citation omitted), *reh'g denied, trans. denied.* It is clear under Indiana law that "immediate" means that the act must be accomplished within such convenient time as is reasonably requisite or within a reasonable time under the circumstances. Immediate as used in the Agreement is not ambiguous.

Here, the evidence shows that Husband and Wife came to a verbal agreement on January 26, 2006, the parties executed the Agreement on March 9, and the trial court incorporated the Agreement into the Decree on March 15. When, on June 1—which was approximately seventy-five days after the trial court issued the Decree—Husband still had not cured the deficiencies on the rental properties, Wife filed her petition for rule to show cause. Given that Husband had ample notice that he was going to be responsible for the deficiencies on the rental properties once the Agreement was eventually approved by the trial court (and therefore had time to start

planning), the fact that Husband had not cured the deficiencies approximately seventy-five days after the Decree was issued is beyond "immediate." In other words, not curing the deficiencies with seventy-five days of the March 15, 2006, Decree—when Husband had warning since late January—was not within a reasonable time under the circumstances.

Furthermore, contrary to Husband's argument on appeal, the evidence shows that he willfully disobeyed the Decree. Husband claims that because he did not have enough money to pay the deficiencies, his conduct simply could not have been willful. On this point, the trial court found, "Furthermore, Husband's failure is not excusable since he had adequate funds, including, rental income with which to meet these obligations." Appellee's App. p. 4.

We first note that Husband, who was represented by counsel at the time, freely negotiated the terms of the Agreement. That is, Husband himself agreed to immediately cure the deficiencies on the rental properties. As such, Husband's argument on appeal that it was impossible for him to do so is not well taken. If it were impossible for him to have cured the deficiencies, presumably he would not have entered into the agreement in the first place. In any event, although it is not clear the exact amount of the deficiencies at the time the trial court issued the Decree on March 15, 2006,[7] Wife presented ample evidence at the contempt hearing that Husband had sufficient funds to both cure the deficiencies and make the monthly payments. Nevertheless, Husband did not cure the deficiencies or timely make the monthly payments, and all three rental properties went into foreclosure, with two of them being sold.

The Arquette property was in pre-foreclosure in January 2006 and went into foreclosure in March. Although Husband brought it out of foreclosure, he was late in making the June and July payments. The Edgehill property was behind in payments in January 2006; however, it went into foreclosure in March or April and was sold in July. Husband did not timely make the payments on the Goodlet property; accordingly, it went into foreclosure in May 2006 and was sold in July. As such, only the Arquette property remained at the time of the August 2006 hearings.

In addition, Wife presented evidence at the contempt hearing that Husband was receiving rent from the tenants and Section 8 money from the government that exceeded the mortgage payments for these properties but that Husband still did not pay the mortgages on a timely and regular basis. Wife also presented evidence of Husband's salary during the relevant time frame, of how much money he was spending on entertainment-related expenses, that he received an escrow overage check for $1009.00, that Husband lived with his sister for an extended period of time and therefore had decreased living expenses, and that the parties' credit card debt had been paid off with the proceeds from the sale of the marital residence, thereby reducing his debt load. Notably, Wife presented evidence that between March 20 and July 31, 2006, Husband received rental income of $4750.00 and salary of $17,000.00 but only paid $2555.00 in mortgage payments for the rental properties from his Fifth Third bank account.[8] *See* Tr. p. 108–

---

7. It appears that when the parties reached the verbal agreement in January 2006, the properties were between thirty and ninety days behind.

8. Husband argues, as his Issue 10, that the trial court erred by allowing Wife to present evidence of his salary after Wife filed the petition for rule to show cause on June 1, 2006. Instead, Husband argues that only his

09. This evidence supports the trial court's finding that Husband's failure to immediately cure the deficiencies "is not excusable since he had adequate funds, including, rental income with which to meet these obligations." Appellee's App. p. 4. Because Husband willfully disobeyed the Decree, the trial court did not abuse its discretion in finding him in contempt for failing to immediately cure the deficiencies on the rental properties.

## II. Damage to Wife's Credit

■ Next, Husband contends that the trial court erred in awarding Wife $25,000.00 for damage he caused to her credit for failing to immediately cure the deficiencies on the rental properties. Specifically, Husband argues that Wife did not submit evidence to support the award.

■ "Once a party has been found in contempt of court, monetary damages may be awarded to compensate the other party for injuries incurred as a result of the contempt." *Major*, 822 N.E.2d at 172 (citing *Cowart v. White*, 711 N.E.2d 523, 532 (Ind.1999), *aff'd on reh'g*, 716 N.E.2d 401 (Ind.1999)). In determining an amount of damages, the trial court may take into account " 'the inconvenience and frustration suffered by the aggrieved party.' " *Id.* at 172 (quoting *Cowart*, 711 N.E.2d at 532). The determination of damages in a contempt proceeding is within the trial court's discretion, and we will reverse an award of damages only if there is no evidence to support the award. *Id.*

Here, Wife testified at the contempt hearing that Husband's failure to immedi-

ately cure the rental property deficiencies and allowing them to go into foreclosure damaged her credit. Specifically, she stated:

> Um, I received notice from a, uh, Chase Bank. And I'd had an account with them when it was previously INB and NBD for roughly eighteen years. And they—and I've never had a, a negative payment with them. And they contacted me and cancelled my account due to real estate loans delinquent. Um, I had applied for a Discover Card,[9] a National City VISA, which I had had an account with them as well, and I was declined.

Tr. p. 35. The record shows that National City denied Wife's application in July 2006. Wife's Ex. H. However, the record shows that Wife's account with Chase was closed in February 2006, *before* the trial court issued the Decree on March 15, 2006. Wife's Ex. I. According to Wife's credit report from TransUnion dated July 2006, the Edgehill property was ninety days past due and foreclosure had been initiated, the Goodlet property was sixty days past due, and the Arquette property was current. Wife's Ex. I. However, the report also shows that all three properties were delinquent in January 2006, *before* the trial court issued the Decree on March 15, 2006. Because it is apparent that Wife had credit problems before the trial court issued the Decree, it is difficult, if not impossible, to determine on the record before us how much damage Husband caused to Wife's credit by not immediately curing

salary between March 15, 2006, and June 1, 2006, is relevant. We disagree. The deficiencies on the rental properties continued past the date Wife filed the petition for rule to show cause. Therefore, how much money Husband was bringing in after that date is relevant to address his continued failure to cure the deficiencies.

9. Wife did not elaborate on her application for a Discover Card. Wife's credit report, however, shows that Discover made an inquiry into her credit in April 2006. Wife's Ex. I. We do not know if Wife applied for the card either before or after the March 15, 2006, Decree.

the deficiencies on the rental properties and instead allowing them to go into foreclosure. For example, Wife did not present evidence of her credit rating before the Decree and then after the Decree, which would have given us a gauge of how much damage Husband's contempt caused. In addition, Wife did not present evidence of the claimed increased interest rate she was facing if she purchased a home, which could then be compared to the normal interest rate.[10]

Despite this flimsy evidence that Husband's contempt damaged her credit, Wife asked the trial court to award her $25,000.00 in damages. When asked by her counsel to articulate the effect of Husband's actions on her credit, Wife stated:

> I will not be able to purchase a home or a condo or even actually move into another rental complex because of the credit (bureau) that I do have. I have contacted Portrait Homes discussing, uh, what I would have to go through in order to possibly [own] a condo and they were very clear on the foreclosures that have shown up on my credit bureau is going to definitely affect me either by not being able to loan me or—the money—or I'm not going to get a good rate which is going to make it unaffordable for me. Uh, it'll take years before this will all start to dissipate in any form or fashion.

Tr. p. 57–58. Then, when asked by her counsel if she had "a dollar amount in mind that you think would compensate you for how you've been damaged in this financial regard," Wife responded, "Twenty–five–Thousand." *Id.* at 58. No further evidence was offered.

■ "A damage award must be supported by probative evidence and cannot be based upon mere speculation, conjecture, or surmise." *Crider & Crider, Inc. v. Downen,* 873 N.E.2d 1115, 1118 (Ind.Ct. App.2007). Here, Wife presented no evidence to justify an award of $25,000.00. As our Supreme Court explained in *Major,* the fact that Husband did not challenge Wife's request for $25,000.00 in damages is "of no moment." 822 N.E.2d at 172. Because Wife did not submit any evidence in support of her request, the trial court abused its discretion in awarding her $25,000.00. We therefore reverse the damages award.[11]

### III. Sale of Rental Property and Vehicle

■ Next, Husband contends that the trial court erred in ordering the sale of the Arquette property and the sale or refinancing of the Jetta because it was a modification of the parties' Agreement. Upon dissolution of a marriage, the parties are free to draft their own settlement agreement. *White v. White,* 819 N.E.2d 68, 70 (Ind.Ct.App.2004). Such agree-

10. Wife's credit report also shows two state tax liens, which Wife also contends damaged her credit. However, one of the liens was filed in January 2006, before the Decree, and the other was filed in May 2006, after the Decree. In July 2006, both liens were satisfied from Husband's portion of the parties' 2005 tax refund. Wife presented no evidence of how the May 2006 lien adversely affected her credit in light of the earlier lien. In addition, to the extent that Wife argues that the Jetta loan damaged her credit, her credit report shows that payments were late in July and August 2005, well before the Decree, and

that they were then current. Wife did claim, though, that she received a letter on March 23, 2006, that payments had been missed. On this point, we note that Husband was not ordered to be responsible for the Jetta debt until March 15, 2006.

11. In his brief, Husband devotes five separate issues to damages, some of which contain overlapping arguments. In light of our resolution of this issue, we need not address the other issues.

ments are contractual in nature and become binding upon the parties once the trial court merges and incorporates such into the divorce decree. *Id.* To that end, Indiana Code § 31–15–2–17(c) provides, "The disposition of property settled by an agreement . . . and incorporated and merged into the decree is not subject to subsequent modification by the court, except as the agreement prescribes or the parties subsequently consent." Specifically, in a contempt proceeding, a trial court has no authority to modify the order it was called upon to enforce. *Kimbrell v. Secrist,* 613 N.E.2d 451, 453 (Ind.Ct.App. 1993).

As for the Arquette property, the Agreement provides:

> In the event Husband defaults on any mortgages (not otherwise in default, or deemed to be in default as of January 26, 2006,) or obligation associated with the rental properties (including a failure to cure all outstanding deficiencies) causing late fees, finance charges, or any other financial detriment which could negatively affect Wife's credit, *Wife can petition the Court for an Order to obtain an immediate sale of the properties for the amount then owed.*

Appellee's App. p. 17 (emphasis added). In its contempt order, however, the trial court found:

> 3. The Court finds that the property located at 4109 Arquette Ct., Indianapolis, Indiana shall remain on the market for sale until it sells. It shall continue to be listed for Sixty–Nine Thousand Dollars ($69,000.00). In the event this property is not sold by November 1, 2006, the price shall be reduced by Five Thousand Dollars ($5,000.00) each month until the price has reached For-

ty–Five Thousand Dollars ($45,000.00), which should be sufficient to cover the costs of the sale and the mortgage balance.

*Id.* at 5. At the time of the contempt hearing, the amount owed on the Arquette property was approximately $40,000.00. Tr. p. 34–35. Husband argues that the trial court improperly modified the Agreement because the Agreement provides that the house should be sold for the amount "then owed," whereas the order provides that the house should be listed at a higher amount and then gradually reduced to approximately that price. Because Husband can demonstrate no harm from the house being listed at a price higher than the amount owed and then eventually being lowered until approximately that price is reached, there is no error in this regard.[12]

As for the Jetta, the Agreement provides:

> Wife agrees that Husband shall become or continue to be the sole owner of all tangible and intangible personal property identified below:
>
> a. The 2001 V W Jetta VR 6 automobile which Husband has been and is currently using as his personal vehicle, along with the outstanding debt on the automobile.

Appellee's App. p. 18. In its contempt order, however, the trial court found:

> 2. The Court finds that Husband is hereby ordered to either sell or refinance the 2001 Volkswagen Jetta within sixty (60) days. Upon sale or refinance of this vehicle, Husband is ordered to immediately pay off the loan balance due and owing on this vehicle.

---

12. Even though the trial court ordered that any profit from the sale of the Arquette property be used to satisfy Wife's judgment against

Husband, we note that we reversed the $25,000.00 damages award.

*Id.* at 5. Husband argues that the trial court improperly modified the Agreement because the Agreement did not call for a "mandatory sale" of the Jetta but the trial court's contempt order does. Appellant's Br. p. 42. We disagree. We emphasize that the trial court did not order Husband to transfer ownership of the Jetta to Wife, which would have been an impermissible modification of the Agreement. Rather, the court ordered Husband to either sell *or refinance* the Jetta and pay off the loan, so that the vehicle is no longer jointly titled in Wife's name and will not affect her credit if monthly payments are missed. This was not improper.

## IV. Tax Lien

 Next, Husband contends that the trial court erred in finding him in contempt of the Decree for "fail[ing] to timely settle the 2001 and 2004 tax lien liability." *Id.* at 46. The Agreement provides, "Additionally, Husband shall pay or resolve the issues with the I.R.S. regarding any outstanding tax liability for 2001 & 2004 which liabilities are estimated at Five Hundred Dollars ($500.00)." Appellee's App. p. 20. The Agreement continues, "If Husband has not satisfied any past tax liability that he has agreed to pay then such obligation if deducted from the refund by the IRS will be offset from his share of the refund." *Id.* at 22. At the contempt hearing, Husband himself admitted that he failed to pay or resolve the issues with the IRS and that the IRS intercepted a portion of the parties' 2005 tax refund. Husband argues, though, that because the Agreement provided for a remedy if he failed to pay or resolve the issues with the IRS, he cannot be held in contempt. Just because the Agreement addressed what would happen if the parties' refund were intercepted to satisfy this liability does not mean that Husband cannot be held in contempt for willfully

disobeying what he was ordered to do. Rather, this just means that there are no damages flowing from Husband's contempt because it is undisputed that the money was deducted from Husband's portion of the refund. The trial court did not abuse its discretion in finding Husband in contempt of the Decree for failing to pay or resolve the outstanding tax liability.

## V. Telephonic Conference

Next, Husband contends that the "Court Abused its Discretion in ruling (when a Request for Telephonic Conference was filed by [Wife]) without knowing what settlement offers might have been made by [Wife] in said conference." Appellant's Br. p. 47. We first note Husband's argument on this point is very difficult to decipher. What we can decipher, though, is that Husband is challenging the trial court's handling of a telephone conference that apparently never occurred. On November 19, 2006, which was after the two-day contempt hearing but before the trial court issued its contempt order, Wife filed a Request for a Telephonic Conference "to discuss the status of pending issues and the sale of the Arquette Property." Appellee's App. p. 34. On November 24, which is the same day the trial court issued the contempt order, the trial court scheduled a telephone conference for December 6, which was then rescheduled for December 18. The telephone conference was never held, and the parties were ordered to communicate regarding the sale of the Arquette property. Now, Husband appears to argue that the trial court should have held the conference *before* it issued the contempt order because Wife could have offered Husband a settlement during that conference, which could have changed the contempt order. Husband offers no support for his position. We see no error in the trial court setting a status

hearing after the contempt order nor do we find error in the court not holding the hearing.

## VI. Attorney Fees

 Last, Husband contends that the trial court erred in "in awarding excessive attorneys' fees to [Wife's] attorney, because the figures include attorney's fees allegedly on [Husband's] behalf without his consent or knowledge." Appellant's Br. p. 54. The Agreement addresses attorney fees and provides:

> If either Husband or Wife defaults in the performance of any of the terms, provisions or obligations herein set forth, and it becomes necessary to institute legal proceedings to effectuate the performance of any provisions of this Agreement, then the party found to be in default shall pay all expenses, including reasonable attorneys fees, incurred in connection with such enforcement proceedings.

Appellee's App. p. 23. Though difficult to follow, Husband, citing various Rules of Professional Conduct, appears to argue that Wife's attorney should be prohibited from receiving attorney fees for her efforts in trying to get a default judgment on one of the rental properties set aside. Husband reasons that because he admitted that Wife's attorney's efforts also benefited him (because the default judgment was apparently entered against both of them), Wife's attorney improperly performed services on his behalf. Husband's argument is not cogent and is therefore waived. Ind. Appellate Rule 46(A)(8)(a). Waiver notwithstanding, there is no evidence that Wife's attorney acted on Husband's behalf. The fact that Husband may have received some incidental benefit from Wife's attorney's efforts in getting the default judgment set aside has no bearing on the propriety or amount of the attorney fees awarded by the trial court for Wife's attor-

ney's services rendered in connection therewith. We therefore affirm the trial court on this point.

 As for Wife's request for appellate attorney fees, because we are affirming the trial court's finding that Husband is in contempt of the Decree, appellate attorney fees are proper pursuant to the Agreement. We therefore remand for a calculation of reasonable appellate attorney fees.

Affirmed in part, reversed in part, and remanded.

BAKER, C.J., and BAILEY, J., concur.