**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Sep 11 2014, 9:54 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**KATHERINE S. BROWN**
Brown & Somheil
Brazil, Indiana

ATTORNEY FOR APPELLEE:

**ROBERT P. KONDRAS, JR.**
Hunt Hassler Lorenz & Kondras LLP
Terre Haute, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| NANCY HAY, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 11A01-1401-DR-22 |
| | ) | |
| RICHARD HAY, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE CLAY CIRCUIT COURT
The Honorable Joseph D. Trout, Judge
Cause No. 11C01-9801-DR-11

**September 11, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Petitioner, Nancy L. (Hay) Carder (Wife), appeals the trial court's Contempt Order, holding her in contempt for failing to pay Appellee-Defendant, Richard E. Hay (Husband), in accordance with the terms of the Marital Estate Distribution Order (Distribution Order).

We reverse and remand.

## ISSUES

Wife raises two issues on appeal, which we restate as follows:

(1) Whether the trial court abused its discretion by holding Wife in contempt for violating the Distribution Order; and

(2) Whether the trial court erred by declining to clarify the terms of the Distribution Order.

Husband raises two issues on cross-appeal, which we restate as follows:

(1) Whether Wife has waived her right to appeal by filing a belated motion to correct error; and

(2) Whether Wife is judicially estopped from challenging the Distribution Order under the doctrine of invited error.

## FACTS AND PROCEDURAL HISTORY

Husband and Wife were married on June 8, 1964. The marriage produced one child, born on April 26, 1977. During their thirty-four-year marriage, Husband and Wife resided in Brazil, Clay County, Indiana. Although both parties are now retired, Husband was an

2

art professor at Indiana State University, and Wife formerly taught for the Vigo County School System. On January 13, 1998 (Filing Date), Wife filed a petition to dissolve their marriage. A few months later, Wife moved out of the marital residence.

On April 27, 1998, Husband and Wife executed a Property Settlement Agreement (Settlement Agreement), which stipulated, in part, that the parties would obtain a Qualified Domestic Relations Order (QDRO) to "provide for an equal division of [their respective] pension funds as of the [Filing Date]." (Appellant's App. p. 24). On April 30, 1998, the parties waived the final hearing and submitted the Settlement Agreement to the trial court. The trial court approved the Settlement Agreement and entered a decree of dissolution.

On November 30, 1998, Husband filed a motion for relief from judgment. He asserted that the parties' Settlement Agreement could not be accomplished because Wife's Indiana State Teachers' Retirement Fund (ISTRF) was not divisible by a QDRO. On February 22, 1999, the trial court vacated the portions of the Settlement Agreement pertaining to the division of property and set the matter for a final hearing. The terms regarding the parties' child and granting the divorce remained in full force and effect.

A three-day final hearing was held on March 7, April 19, and May 19, 2000. On August 18, 2000, the trial court issued the Distribution Order, in which it "endeavored to arrive at relatively accurate valuations for an equal distribution of this marital estate utilizing the [Filing Date] as the date for valuations." (Appellant's App. p. 41). The trial court calculated the value of the marital estate to be $879,228 before dividing the property between the parties. Ultimately, the distribution of assets resulted in a net award to Wife of $187,499 and $691,729 to Husband. In order to effectuate an equal division of the

3

marital estate, the trial court—after deducting $5530 for Wife's contribution to their child's college expenses—ordered Husband to pay $246,585 to Wife by executing a QDRO on his retirement account.

In calculating and dividing the marital estate, the trial court included the value of Husband's retirement account, as well as the annuity savings portion of Wife's ISTRF[1] and another small retirement fund in her name. At the time of the final hearing, Wife had been diagnosed with cancer and was undergoing treatment. Wife's prognosis was grim, and she did not anticipate that she would survive long enough to receive any payout from the Monthly Pension Benefit portion of her ISTRF, which is contingent upon Wife's retirement and survival. Rather than attributing a specific value to Wife's share of the estate for the value of her Monthly Pension Benefit, thereby reducing Husband's final payment obligation, the trial court ordered

> that [Wife's] pension fund contingent upon her retirement and survival shall be shared equally between the parties. If capable to do so, [Wife] is ordered to execute documents to direct deposit those proceeds in an account jointly owned by [Wife and Husband] with each entitled to one-half of the proceeds as they are received. In the event such transaction is not available to [Wife], she is ordered to transfer one-half of each retirement check derived from that account to [Husband], his heirs or assignees.

(Appellant's App. pp. 42-43).

On September 19, 2000, Husband filed a motion to correct error, which the trial court denied. He subsequently filed a Notice of Appeal on November 22, 2000. On May

---

[1] Wife's ISTRF consists of both an annuity savings account and a Monthly Pension Benefit. The parties agree that this appeal pertains solely to the Monthly Pension Benefit portion, which represents $2,369.63 of her monthly ISTRF benefits.

31, 2001, in a memorandum decision, this court instructed the trial court to correct a computational error involving a $70,000 allocation for Wife's share of equity in the marital residence. *See Hay v. Hay*, No. 11A01-0011-CV-394 (Ind. Ct. App. May 31, 2001), *trans. denied*. On remand, on October 19, 2001, the trial court ordered Husband to prepare a QDRO to pay Wife $211,585 from his retirement account.

Following the dissolution, Husband worked for another decade before retiring in 2008. Wife, who returned to work after recovering from cancer, retired in June of 2011. She received her first ISTRF check on July 31, 2011. Thereafter, Wife consulted with a financial adviser, who calculated Husband's one-half share of the Monthly Pension Benefit based on its value as of the Filing Date. In accordance with the financial adviser's opinion, Wife paid $559 of her $2,369.63 Monthly Pension Benefit to Husband each month thereafter. On September 2, 2011, Husband filed a Petition for Rule to Show Cause, alleging that Wife was in violation of the Distribution Order because she had failed to provide him with *one-half*—or $1,184.82—of her total Monthly Pension Benefit. In response, Wife filed an Information for Contempt on November 7, 2011, alleging that Husband had failed to comply with the Distribution Order's mandate to equally divide the parties' substantial collection of artwork.

On February 9, 2012, the trial court heard evidence on Husband's and Wife's cross-motions. Wife orally requested the trial court to issue specific findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A), which the trial court denied. On October 8, 2013, the trial court issued its Contempt Order. The trial court declined to hold Husband in contempt, finding that the artwork had been divided under the supervision of

the court and a court-appointed auctioneer. However, the trial court found Wife to be in contempt "for in effect modifying to her own benefit the [Distribution Order,] dated August 18, 2000[,] and not paying [Husband] as ordered." (Appellant's App. p. 15). "[I]n finding [Wife] in contempt, the [c]ourt interpret[ed] that prior [Distribution] Order to mean that the pay checks that she receives from her pension upon retirement are to be divided according to that [Distribution] Order with [Husband] receiving his one-half"—or $1,184.82. (Appellant's App. p. 16). As a sanction, the trial court directed Wife to pay $1,000 of Husband's attorney fees. On November 7, 2013, Wife filed a Motion to Correct Error, which the trial court denied following a hearing on December 17, 2013.

Wife now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *CROSS-APPEAL*

#### A. *Belated Motion to Correct Error*

Husband has raised threshold jurisdictional issues; thus, we must address his claims first. Husband contends that Wife filed her Motion to Correct Error more than thirteen years after the trial court entered the Distribution Order of August 18, 2000. As a result, Husband argues that Wife's Motion to Correct Error "had to be denied as a matter of law." (Appellee's Br. p. 9).[2]

---

[2] We note that Husband's sparsely developed argument does not comply with the mandates of Indiana Appellate Rule 46. First, Wife is challenging the Contempt Order, not the denial of her Motion to Correct Error. Second, Husband simply asserts that Wife's Motion to Correct Error had to be denied due to untimeliness, without mentioning the effect that a belated motion has on Wife's right to appeal. Notwithstanding the fact that a party's failure to support an argument with cogent reasoning waives the issue on appeal, we will address Husband's claim because it is a matter of appellate jurisdiction and, as

Following the trial court's entry of final judgment, a party has thirty days to either file a motion to correct error or a Notice of Appeal. Ind. Appellate Rule 9(A)(1); Ind. Trial Rule 59(C). If the party elects to file a motion to correct error, any subsequent Notice of Appeal must then be filed within thirty days of the trial court's ruling on the motion to correct error. App. R. 9(A)(1); T.R. 59(C). An untimely motion to correct error "renders the trial court's ruling thereon a nullity" and necessarily results in a belated Notice of Appeal. *Wyrick v. Gentry*, 796 N.E.2d 342, 345 (Ind. Ct. App. 2003). A timely Notice of Appeal is a prerequisite to our court acquiring jurisdiction over a case; therefore, if a party files an untimely motion to correct error, she forfeits her right to appeal. *D.C., Jr. v. C.A.*, 5 N.E.3d 473, 477 (Ind. Ct. App. 2014).

Husband asserts that the trial court entered final judgment in this matter on August 18, 2000; thus, any motion to correct error or Notice of Appeal was due no later than September 17, 2000. We agree with Husband that Wife's right to challenge the propriety of the Distribution Order has long since lapsed. However, we find that Wife's November 7, 2013 Motion to Correct Error preserved her right to appeal the Contempt Order.

It is well established that a contempt action is not "designed to correct errors previously made by trial courts." *Crowl v. Berryhill*, 678 N.E.2d 828, 830 (Ind. Ct. App. 1997). Nonetheless, it is also long settled that, even after final judgment has been entered and the time to file a motion to correct error or a Notice of Appeal has expired, a trial court retains jurisdiction to interpret, clarify, or enforce a prior order. *DeVoe v. DeVoe*, 531

---

such, may be raised at any time, including by our court *sua sponte*. *Bohlander v. Bohlander*, 875 N.E.2d 299, 301 (Ind. Ct. App. 2007), *trans. denied*.

7

N.E.2d 1200, 1202 (Ind. Ct. App. 1988). As part of the contempt proceedings, Wife requested the trial court to interpret and clarify the Distribution Order to the extent that it contained ambiguous language. The trial court found Wife to be in contempt based on its determination that the Distribution Order's language is unambiguous. Wife subsequently filed a timely Motion to Correct Error in response to the trial court's Contempt Order, which was a separate and distinct proceeding from the dissolution and division of marital property. Accordingly, because Wife now appeals an issue that the trial court addressed under its retained jurisdiction, we find that Wife has not waived her right to appeal.

### B. *Doctrine of Invited Error*

Husband also claims that Wife should be judicially estopped from challenging the Distribution Order because she "proposed the [Distribution Order] that the [c]ourt adopted in which [Wife] would only pay [Husband] one half of her monthly pension check if and when she began receiving those checks." (Appellee's Br. p. 7). "The doctrine of invited error is grounded in estoppel and precludes a party from taking advantage of an error that she commits, invites, or which is the natural consequence of her own neglect or misconduct." *Balicki v. Balicki*, 837 N.E.2d 532, 541 (Ind. Ct. App. 2005), *trans. denied*. Invited error is not subject to appellate review. *Batterman v. Bender*, 809 N.E.2d 410, 412 (Ind. Ct. App. 2004). In particular, Husband asserts that Wife must "live with the result of the order she requested from the [c]ourt in the first place. [Husband] had to live many years on half of his retirement funds and had to wait to see if he would ever receive his one-half share of [Wife's] monthly pension check." (Appellee's Br. p. 8).

8

Contrary to Husband's claim, Wife does not dispute that the Distribution Order obligates her to pay Husband one-half of her Monthly Pension Benefit. Instead, we find it to be clear that Wife's challenge is based on the trial court's *interpretation* of the Distribution Order as requiring Wife to pay one-half of the present value of her Monthly Pension Benefit, rather than one-half of its value as of the Filing Date. Moreover, we find nothing in the Distribution Order or elsewhere in the record to support Husband's contention that Wife implored the trial court to defer the distribution of Wife's Monthly Pension Benefit because she "wanted more of [Husband's] retirement funds at the time of the divorce," and in exchange for this delay, Husband would be entitled to any increase in the value of Wife's ISTRF at the time she could begin drawing her benefits. (Appellee's Br. p. 7).

In addition, both the trial court and Husband emphasize Wife's apparent acquiescence to the Distribution Order given that she never filed a motion for relief from judgment under Indiana Trial Rule 60. Despite the ample time that Wife had to object to the Distribution Order, we decline to fault her for waiting eleven years to challenge the Distribution Order's lack of clarity. It was only after Wife paid a portion of her first pension check to Husband, with Husband subsequently filing his Petition for Rule to Show Cause, that Wife became aware of the parties' conflicting interpretations of the Distribution Order. *See Moss v. Frazer*, 614 N.E.2d 969, 971-72 (Ind. Ct. App. 1993). Accordingly, we find that Wife has not invited any error and, therefore, has not forfeited her claim for appeal.

II. *APPEAL*

9

A. *Contempt*

Wife claims that the trial court abused its discretion by finding her to be in contempt of the Distribution Order. Whether a party is in contempt of a court order is a matter left to the trial court's discretion. *Cowart v. White*, 711 N.E.2d 523, 530-31 (Ind. 1999). We will uphold a finding of contempt unless the trial court has abused its discretion—that is, if the trial court's decision is either contrary to the logic and effect of the facts and circumstances or is contrary to law. *Ryan v. Janovsky*, 999 N.E.2d 895, 898 (Ind. Ct. App. 2013), *trans. denied.* On review, we do not reweigh the evidence or assess the credibility of witnesses, and we will reverse a contempt finding "only where there is no evidence or inferences therefrom to support it." *Phillips v. Delks*, 880 N.E.2d 713, 718 (Ind. Ct. App. 2008).

Indiana Code section 31-15-7-10(1) provides that "all orders and awards contained in a dissolution of marriage decree or legal separation decree may be enforced by . . . contempt." A trial court may enter a finding of contempt only where a party is subject to "an order commanding [him or her] to do or refrain from doing something." *Williamson v. Creamer*, 722 N.E.2d 863, 865 (Ind. Ct. App. 2000). A determination of contempt requires the trial court to have found that the party willfully disobeyed the court's order. *Id.* The trial court's "order must have been so clear and certain that there could be no question as to what the party must do, or not do, and so there could be no question regarding whether the order is violated." *Deel v. Deel*, 909 N.E.2d 1028, 1032 (Ind. Ct. App. 2009). Thus, a party may not be found in contempt for violating "an ambiguous or indefinite

10

order." *Phillips*, 880 N.E.2d at 718. Wife bears the burden of demonstrating that she did not willfully violate the Distribution Order. *Williamson*, 722 N.E.2d at 865.

A petition for contempt is not a substitute for a motion to correct error or a motion for relief from judgment. Instead, the purpose of contempt proceedings is "to vindicate the courts' dignity and to enforce litigants' rights pursuant to court orders." *Crowl*, 678 N.E.2d at 830. Whether a trial court's prior order is constitutional, correct, or otherwise appropriate is irrelevant in a determination of contempt. *Id.* All that is required to support a finding of contempt is "[u]ncontradicted evidence that a party is aware of a court order and willfully disobeys it." *Williamson*, 722 N.E.2d at 866. Thus, even if the trial court's "order is erroneous, it must still be obeyed until reversed on appeal." *Crowl*, 678 N.E.2d at 830.

Here, the trial court found Wife to be in contempt

for not paying as per the previous [Distribution] Order, making incorrect interpretations of the previous [Distribution] Order without seeking the [c]ourt's assistance in doing so, and more importantly for reducing the amount of the payments to exclude the thirteen years after the divorce when clearly by the [Distribution] Order, that was not [the trial court's] intent.

(Appellant's App. p. 17). Wife contends that "[t]he court's finding [her] in contempt for not paying Husband one-half (1/2) of her total retirement benefits, which includes post-dissolution of marriage years of service, is contrary to the terms of the [Distribution Order] and erroneous." (Appellant's Br. p. 7). In the alternative, Wife contends that the terms of the Distribution Order are "vague and ambiguous as to Wife's ISTRF." (Appellant's Br. p. 8).

11

First, we find no evidence to support—either directly or by inference—the finding that Wife *willfully* disobeyed the Distribution Order. During the hearing, Wife testified that "it was [her] understanding that what [she] would be sending [Husband] was based on the [Filing Date]" because "[t]hroughout that whole paper it says as of the [Filing Date]." (Transcript pp. 26-27, 37). In addition, Wife explained that her equal share of the marital estate included a portion of Husband's retirement account, which had been valued as of the Filing Date. Although Husband continued to work for a decade after their divorce, Wife did not receive "any credit or benefit for contributions made by [Husband] after [the] [Filing] [D]ate." (Appellant's App. p. 45). Similarly, Wife expressed her belief that Husband was not entitled to what she had "earned for the last thirteen years of working." (Tr. p. 36).

> The trial court, however,
>
> specifically reject[ed] [Wife's] position that . . . the last thirteen years she has worked should be excluded. Clearly from the evidence and a review of the file, [Wife's ISTRF] was never valued at the time of the dissolution. [Wife] had a serious illness and there were serious questions about whether or not she would ever live to see retirement age and she would get nothing in the event she passed away prior to retirement. It is clear from the [c]ourt's reading of the [Distribution] Order that instead of valuing that asset and dividing it at the time of the divorce, each party was going to have to wait to see if [Wife] made it to retirement age and then both would reap the benefits therefrom.

(Appellant's App. p. 16). While we agree with the trial court that the Distribution Order placed the risk of ever receiving any payout from Wife's Monthly Pension Benefit equally on both spouses, it does not stipulate that Husband would be entitled to reap the additional benefits accumulated through Wife's post-dissolution years of labor. Our review of the

12

record reveals that upon receiving her first pension check and for each month thereafter, Wife paid Husband $559 based on her financial adviser's calculation of its value as of the Filing Date. The evidence does not reflect that Wife resolved to pay a different amount than specified in the Distribution Order; rather, Wife tendered the payments that she, in good faith, believed "constitute[ed] full compliance with the [Distribution Order]." *Rohn v. Thuma*, 408 N.E.2d 578, 581-82 (Ind. Ct. App. 1980).

Second, the trial court found Wife to be in contempt based on Wife's non-compliance with what is, in our opinion, an ambiguous provision. Our courts have long held that "it would be a harsh application of the law to cite a party for contempt for acting in good faith in obedience to the ambiguous order." *Id.* at 581 (quoting *State ex rel. Davis v. Achor*, 75 N.E.2d 154, 158 (Ind. 1947)). A judgment is ambiguous where "it would lead two reasonable persons to different conclusions as to its effect and meaning." *Gilbert v. Gilbert*, 777 N.E.2d 785, 790 (Ind. Ct. App. 2002). In particular, we find that the trial court's explicit and repeated reliance on the Filing Date "as the date for valuations" throughout the Distribution Order directly conflicts with the trial court's directive that Husband is entitled to "one-half of each retirement check." (Appellant's App. pp. 42-43).

A reading of the Distribution Order reveals that the trial court did not assign a particular value to the Monthly Pension Benefit but ordered its equitable division upon receipt; the trial court admittedly struggled to value certain assets; and the trial court adhered to the Filing Date for valuing all of the other marital assets. Taking these factors into account, along with the firmly established mandate that trial courts *must* select "a date between the final separation date and the final hearing for the purpose of valuing a marital

13

asset[,]" we find that reasonable minds could differ in their understanding as to whether the Distribution Order requires Wife to pay one-half of her Monthly Pension Benefit based on its present value or based on its value as of the Filing Date. *Thompson v. Thompson*, 811 N.E.2d 888, 919 (Ind. Ct. App. 2004), *reh'g denied; trans. denied*. Accordingly, because we find no evidence that Wife willfully violated the ambiguous provision of the Distribution Order, we conclude that the trial court's determination of contempt was an abuse of discretion.

## B. *Clarification of Distribution Order*

Finally, Wife claims that the trial court erred by refusing to clarify the terms of the Distribution Order. As we previously mentioned, the trial court retains discretion to interpret, clarify, and enforce a prior order. *Robinson v. Robinson*, 858 N.E.2d 203, 205-06 (Ind. Ct. App. 2006). However, because public policy "favors the finality of marital property divisions" as a means of eliminating the "vexatious litigation" that frequently accompanies dissolution proceedings, a trial court may not revoke or modify an order concerning the disposition of marital property, except in the case of fraud. Ind. Code § 31-15-7-9.1(a); *Poppe v. Jabaay*, 804 N.E.2d 789, 793 (Ind. Ct. App. 2004), *trans. denied; cert. denied*, 543 U.S. 1164 (2005).

In its Contempt Order, the trial court construed the Distribution Order as obligating Wife to provide Husband with one-half of her *total* Monthly Pension Benefit checks. In support thereof, the trial court stated,

> No way can you eleven years later go back and value that asset as if you were going to divide it and then argue to the court over a decade later that the court should use such a valuation. This is an impermissible modification of the

14

court's previous order. If either side had a problem with the court's previous order from the year 2000, they could have appealed that issue alone or filed an appropriate motion for relief from judgment pursuant to Indiana Trial Rule 60. Whether such [Distribution] Order . . . was in accordance with the law is not of import now in that it has never been challenged.

(Appellant's App. p. 16). Disagreeing with the trial court's determination that it would be an impermissible modification, Wife maintains that the Distribution Order "clearly supports a clarification of the terms "equally" and "one-half" to exclude Wife's post-dissolution contributions." (Appellant's Br. p. 12). We agree.

Whereas a modification of the trial court's original order "in any essential or material manner" is prohibited, a clarification of a property division order merely serves to "provide [the party] with the marital property he was entitled to receive under the original decree." *Evans v. Evans*, 946 N.E.2d 1200, 1205 (Ind. Ct. App. 2011); *Bitner v. Hull*, 695 N.E.2d 181, 184 (Ind. Ct. App. 1998). A party's request for clarification of a property division order obliges the trial court to interpret the order. *Pherson v. Lund*, 997 N.E.2d 367, 369 (Ind. Ct. App. 2013). Judgments are interpreted using the same rules of contract construction. *Patrick v. Patrick*, 517 N.E.2d 1234, 1236 (Ind. Ct. App. 1988).

We have already determined that the provision regarding Wife's duty to pay "one-half of each retirement check" to Husband is ambiguous in light of the trial court's explicit reliance on the Filing Date "as the date for valuations." (Appellant's App. pp. 41, 43). The meaning and effect of an ambiguous judgment must be determined by examining the judgment as a whole, refraining from considering particular words or phrases in isolation. *Gilbert*, 777 N.E.2d at 790-91. A judgment should be construed "so as to render all

15

provisions effective and not merely surplusage." *Id.* at 791. A trial court's interpretation must be "supported by the facts and law." *Patrick*, 517 N.E.2d at 1236.

In this case, there is no dispute that the clear intent of the Distribution Order is to equally divide the "marital estate" between the parties, which the trial court accomplished by assigning Husband the right to receive one-half of Wife's Monthly Pension Benefit "at the time of receipt" and effectuating an immediate equal division of all other marital assets. I.C. § 31-15-7-4(b); (Appellant's App. p. 41). As a matter of law, the marital estate consists only of the property that is acquired by either spouse prior to the marriage or during the marriage but before the parties' final separation. I.C. § 31-15-7-4(a). By definition, any property that Husband or Wife acquired after the Filing Date—including Wife's post-dissolution contributions to her ISTRF—is excluded from the marital estate and, therefore, cannot be contemplated by the Distribution Order. *See Pherson*, 997 N.E.2d at 370. Moreover, although trial courts have wide discretion to distribute pension plans "in a manner best suited to the parties' needs and circumstances[,]" it would exceed the trial court's statutory authority to have crafted a Distribution Order that awarded Husband with non-marital property. *In re Marriage of Preston*, 704 N.E.2d 1093, 1100 (Ind. Ct. App. 1999). We decline to find that the trial court would have intended a property division that is contrary to law. "It is imperative that a trial court clear up an ambiguity in the language of its judgment so that the parties may conform their conduct to that intended by the trial court." *Flynn v. Barker*, 450 N.E.2d 1008, 1009 (Ind. Ct. App. 1983), *cert. denied*, 469 U.S. 934 (1984). Therefore, we remand this case to the trial court with instructions that it

ascertain the value of Wife's Monthly Pension Benefit as of the Filing Date and clarify the Distribution Order so as to award Husband with one-half of said amount.

CONCLUSION

Based on the foregoing, we conclude that Wife did not waive her right to appeal; the trial court abused its discretion by finding Wife to be in contempt and ordering her to pay $1,000 for Husband's attorney fees; and the trial court erred by declining to clarify the ambiguous provision of the Distribution Order.

Reversed and remanded.

MATHIAS, J. concurs

CRONE, J. concurs in part, concurs in result in part, and dissents in part with separate opinion

17

# IN THE
# COURT OF APPEALS OF INDIANA

NANCY HAY, )
                                   )
    Appellant-Petitioner, )
                                   )
        vs. )     No. 11A01-1401-DR-22
                                   )
RICHARD HAY, )
                                   )
    Appellee-Respondent. )

**CRONE, Judge, concurring in part, concurring in result in part, and dissenting in part**

As for Husband's cross-appeal, I agree with the majority that Wife has not waived her right to appeal. And I would find Husband's judicial estoppel argument waived because there is no indication in the record before us that he raised that argument below.

18

*See Dewart v. Haab*, 849 N.E.2d 693, 696 n.4 (Ind. Ct. App. 2006) ("It is well established that a party cannot raise an argument for the first time on appeal.").

As for Wife's appeal, I respectfully disagree with the majority's determination that the trial court abused its discretion in finding her in contempt. I do so for several reasons. First and foremost, the distribution order is unambiguous and not in need of clarification. The order reads in relevant part as follows:

> [The court] has endeavored to arrive at relatively accurate valuations for an equal distribution of this marital estate utilizing the date of the filing of the petition for dissolution of marriage as the date for valuations. Accordingly the Court finds that [Wife] shall have all rights, title and interest of her two pension funds totaling $51,609 and $19,598 respectively [in addition to other assets of specified value].
>
> The Court awards [Husband] the following items: [list of assets of specified value].
>
> Court further orders that [Wife's] pension fund contingent upon her retirement and survival shall be shared equally between the parties. If capable to do so, [Wife] is ordered to execute documents to direct deposit those proceeds in an account jointly owned by [Wife] and [Husband] with each entitled to one-half of the proceeds as they are received. In the event such transaction is not available to [Wife], she is ordered to transfer one-half of each retirement check derived from that account to [Husband], his heirs or assignees.

Appellant's App. at 41-43.

Notably, Judge Yelton, who issued the distribution order, did not assign a value to the pension fund mentioned in the third quoted paragraph. Moreover, the paragraph does not mention the filing date and plainly states that the fund is to "be shared *equally* between the parties," that each party is "entitled to one-half of the proceeds *as they are received*,"

and that in the event direct deposit into a joint account is not available, Wife is "to transfer *one-half of each retirement check*" to Husband. *Id.* at 42, 43 (emphases added). I do not see how the intent to divide the pension proceeds "equally between the parties" upon receipt could be expressed any more clearly.

At the contempt hearing, Husband testified that this arrangement was made at Wife's request and that he agreed with this request. Tr. at 131, 166-67. Judge Trout was entitled to find Husband's testimony credible. To the extent the majority suggests that Judge Yelton was required to select a date between the final separation date and the final dissolution hearing for the purpose of valuing the pension fund, it is axiomatic that parties may agree to a property settlement that the trial court could not legally impose. *See, e.g.*, *Dewbrew v. Dewbrew*, 849 N.E.2d 636, 644 (Ind. Ct. App. 2006) ("[T]he parties may themselves provide for maintenance in settlement agreements where the court could not otherwise order it."). That is precisely what happened here. In agreeing to this arrangement, Husband assumed the risk that Wife would die before retirement and leave him with nothing from that pension fund, and Wife assumed the risk that she would be able to continue working and the value of her pension would increase. Wife must play the hand that she dealt herself.

Stated differently, Wife was not entitled to disobey the unambiguous provisions of the distribution order – a valid order that she chose not to appeal when it was issued over a decade ago. Judge Trout acted within his discretion in concluding that Wife's disobedience was willful, and we should refrain from second-guessing that determination on appeal. *See Phillips*, 880 N.E.2d at 718 ("We will reverse a trial court's finding of

contempt only where there is *no* evidence or inferences therefrom to support it.") (emphasis added); *Witt v. Jay Petroleum*, 964 N.E.2d 198, 202-03 (Ind. 2012) ("Crucial to the determination of contempt is the evaluation of a person's state of mind, that is, whether the alleged contemptuous conduct was done willfully. The determination of whether to find a party in contempt permits the trial court to consider matters which may not, in fact cannot, be reflected in the written record. The trial court possesses unique knowledge of the parties before it and is in the best position to determine how to maintain its 'authority, justice, and dignity' and whether a party's disobedience of the order was done willfully.") (citations omitted).

The record indicates that Wife's misinterpretation of the distribution order was based, at least in part, on the opinion of her financial adviser, a nonlawyer who reviewed the order at her request and calculated Husband's one-half share of Wife's pension based on its value as of the filing date. Contrary to what the majority suggests, I do not believe that such an opinion can serve as a justification for disobeying a valid and unambiguous court order. The judiciary has set up an orderly process for resolving disputes, and we should not allow a party in a contested divorce action to rely on the opinion of a paid nonlegal adviser to circumvent that process. To do so would send a dangerous message to litigants and significantly undercut the ability of trial courts to effectively resolve disputes and enforce their orders.

For all these reasons, I respectfully dissent.